C. EARL FOSTER, Respondent, *v.* MARTIN MULCAHEY, Defendant, Impleaded with FRANK L. STEWART, Appellant.

Fourth Department, May 4, 1921.

Landlord and tenant — effect of holding over by tenant in possession on cotenant who signed lease containing option for renewal as security merely — exercise by cotenant of option of renewal — practical construction by landlord of act of cotenant in holding over.

The act of a tenant in holding over after the expiration of the term of a lease containing an option for renewal does not bind a cotenant who signed the lease as security merely and never occupied the premises or exercised any dominion over them.

One tenant cannot bind his cotenant to the renewal of a term by any unauthorized agreement or act in respect to the common property.

The exercise of an option of renewal given to two tenants must be by their united action either by giving notice, or by jointly holding over, and thus raising the implication that they have made such election.

The practical construction the landlord gave to the act of the occupying
tenant in holding over, when he accepted rent from him and contracted
with him and a third person and referred to him as his tenant and to his
indebtedness for rent, indicates that he did not regard the cotenant as
liable for the rent for the second term.

APPEAL by the defendant, Frank L. Stewart, from a judgment
of the Supreme Court in favor of the plaintiff, entered in the
office of the clerk of the county of Oswego on the 26th day
of July, 1917, upon the verdict of a jury rendered by direction
of the court after a trial at the Oswego Trial Term, and also
from an order entered in said clerk's office on the 23d day of
July, 1920, denying defendant's motion to set aside the verdict
and for a new trial made upon the minutes.

*Udelle Bartlett,* for the appellant.

*Claude E. Guile,* for the respondent.

DAVIS, J.:

On March 20, 1909, the plaintiff and another, to whose
rights he has since succeeded, leased to the appellant and
one Mulcahey the first floor and basement of a building known
as Nos. 122 and 124 Cayuga street in the city of Fulton for
a term of five years, beginning April 1, 1909. The rental
was $600 per year payable monthly. There was a provision
in the lease giving the parties of the second part the option to
renew for a further term of five years at the same rental.

The appellant signed the lease for the sole purpose of
giving security for the payment of the rent. He had no
relation in business with Mulcahey, and never occupied the
premises himself or paid any rent to the knowledge of the
plaintiff.

When the lease terminated the rent had all been paid,
and Mulcahey continued in possession, no notice being given
by any party. He had been conducting a pool and billiard
room and a bowling alley in the premises, but apparently the
business was unprofitable and it was closed for a time during
1917. In November, 1918, Mulcahey made an agreement with
one Crandall, to which plaintiff was a party, to run the business
and turn over two-thirds of the net profits to the plaintiff to
apply on rent which had become in arrears.

When the second term ended a new agreement was entered into whereby Crandall remained in occupation of the premises and continued to use the equipment in the building belonging to Mulcahey, and Crandall was to turn over two-thirds of the net profits to plaintiff, who was to apply it as follows: " If said two-thirds equal or exceed $60 in any one month, he shall receive $50 thereof for the rent of said premises and $10 thereof to reimburse himself for the rent of the equipment which he has hereinbefore agreed to pay Mulcahey; any excess above $60 shall be applied by him on back indebtedness which Mulcahey now owes him, until said indebtedness be fully paid." In this agreement it is recited that Mulcahey " formerly had a lease of said premises from said Foster, which expired March 31, 1919," and the new agreement was signed by the plaintiff, Mulcahey and Crandall.

No rent was ever collected of Stewart and no bills were ever presented to him during the second term, which expired March 31, 1919; but on November 29, 1919, he was sued with Mulcahey for the rent in arrears during the renewal term of the lease. The latter defaulted and on the trial a verdict was directed for the plaintiff for the amount of such rent.

The legal question presented is whether one tenant may by his act in holding over after his term, exercise the option of renewing the lease and thereby bind his cotenant for a new term without his consent.

The precise question seems not to have been decided in this State. The only authority to which our attention has been called where the facts are similar is the case of *Fronty* v. *Wood* (2 Hill [S. C.], 367), which holds that where the lease is to two, only one of whom occupies, the holding over after the expiration of the lease by one may be presumed to be by both unless the other gives notice that he ceased to hold.

With all due deference to the authority of the South Carolina court, we do not believe that is the correct doctrine in this State. When there is no agreement for renewal, our courts have held that where the tenant holds over it is optional with the landlord whether he will treat the tenant as a trespasser or as a tenant for another term, but the tenant holding over has no option. (*Schuyler* v. *Smith*, 51 N. Y. 309.) But where in the lease there is given to the tenant a right to

renew for a further term, then it is optional with the tenant as to whether he will continue in possession or vacate the premises at the close of his term, but the landlord has no option. (*Bruce* v. *Fulton National Bank,* 79 N. Y. 154.) In the case of a tenant holding over and thereby being held to a renewal of the lease, it is said by Judge O'BRIEN in *Herter* v. *Mullen* (159 N. Y. 28, 34): " The principle upon which the rule is founded is that the holding over is such an act of the tenant that the law implies a contract on his part, or leasing of the premises for another year. But whenever the law implies a contract from the act or conduct of the party, the act itself, whatever it may be, must be voluntary."

In the case where the tenant has the option to renew and there is no particular method prescribed in the lease for giving notice of the exercise of the option, a tenant may adopt any reasonable method at the end of his term to indicate that he elects to renew the lease. He may give the notice orally or in writing, or his election may be implied from his holding over. Where there are two tenants, in order that they may make a new contract by exercising an option, it must be done by their united action, either by giving such notice or by jointly holding over, and thus raising the implication that they have made such election. But Mulcahey was clothed with no power or authority to give notice or by any act of his to bind Stewart to a renewal and thereby create for him a new contract and liability. It took joint action of the two to make the lease, and it would take their joint action to renew it. Stewart never gave notice that he desired to exercise such option, nor participated in any act purporting to renew the lease. Unless Mulcahey was an agent with power to sign Stewart's name to a notice renewing the lease, he had no power to bind him by remaining on the premises, for no one method of giving notice of the exercise of the option has greater force or sanction than any other. The contract that the law will imply from the act or conduct of the party must be from some voluntary act. It will not imply a contract or obligation from an act of the party which proceeds from mistake or fraud, or which results from force or coercion of any kind. (*Herter* v. *Mullen, supra,* 35.) Stewart had never occupied the premises or

exercised any dominion over them, nor paid any rent, so no acquiescence by him in Mulcahey's acts may be implied.

The doctrine just stated finds support in this State in somewhat analogous cases. In *Buchanan* v. *Whitman* (151 N. Y. 253) the lease had been made to a partnership with the privilege of renewal. The partnership was dissolved and one of the partners held over attempting to exercise the option of renewal. The landlord instituted summary proceedings to recover possession of the premises, and the court held that the holding over of one tenant did not operate to renew the lease made to the two partners. (See, also, *James* v. *Pope,* 19 N. Y. 324.)

The rule which we are declaring to be the one controlling in this State, that one tenant cannot bind his cotenant to the renewal of a term by any unauthorized agreement or act in respect to the common property, is recognized as correct in principle in text books and in other jurisdictions. (See 16 R. C. L. 898; 17 Am. & Eng. Ency. of Law [2d ed.], 672; *Howell* v. *Behler,* 41 W. Va. 616; *Tweedie* v. *P. E. Olson Hardware & Furniture Co.,* 96 Minn. 238.)

Moreover, the practical construction the plaintiff gave to the act of Mulcahey in remaining in possession, when he accepted rent from him, and contracted with him and Crandall and referred to him as his tenant and to his indebtedness for rent, indicates that the idea of holding Stewart liable for the rent for the second term was an afterthought, when plaintiff's dealings with Mulcahey and Crandall had not been a financial success.

The judgment and order should be reversed, with costs, and the complaint dismissed upon the merits, with costs.

All concur.

Judgment and order reversed and complaint dismissed, with costs.