HERMAN GOLDBERG and GUSTAVE J. GOLDBERG, Landlords, v.
WILLIAM HIMLYN, Executor, WILLIAM F. TAYLOR, et al.,
Tenants.

County Court, Kings County, October, 1923.

Landlord and tenant — renewal of lease — notice of election to renew
must be unqualified and in strict accord with original lease — when
notice of intention to renew will be deemed insufficient — notice by agent
not a proper notice — when one joint tenant cannot compel renewal
of lease under covenant in original lease.

A notice of an election to renew must be unequivocal, unqualified and strictly
according to the terms of the original lease, and the giving of such a notice is
a condition precedent which must be performed before the right to a renewal
may become vested.

A lease of certain premises for a term of seven years from February 1, 1916,
containing a covenant against assignment without the written consent of the
landlords provided that if the tenants, three months before the expiration of the
term, should have given the landlords written notice of a desire for a renewal
of the lease, the landlords, their heirs and assigns would execute and deliver
to the tenants a further lease of the premises for the further period of seven
years from the expiration of said lease at such a yearly rental as might be agreed
upon between the parties. More than three months before the expiration of
the term a written notice of renewal for a term of seven years from February
1, 1923, upon all the terms and conditions stated in the existing lease and
signed by one L. as agent in the names of the estates of four of the five tenants,
who had died during the term, was served upon the landlords who within a
week by letter caused said notice of renewal to be rejected and returned to L.
upon the ground that it was not a legal or sufficient notice for the reasons
assigned in their letter. Again and more than three months prior to the
expiration of the term of the lease L. served upon the landlords a letter signed
by him in the names of the alleged successors in interest of all the tenants and
purporting to be the exercise of an option to renew the lease for a further term
of seven years from February 1, 1923. Accompanying said letter there was a
proposed lease signed and acknowledged by the successors in interest of the
original tenants and providing for a further term of seven years from the
expiration of the renewal term, making the election of renewal contingent upon
the granting of a still further renewal. The landlords caused both said notice
and the proposed lease which they refused to sign to be returned to L. by letter
stating that they were under no obligation to enter into a lease with the persons
indicated in the said notice. Upon awarding a final order in favor of the
landlords in a proceeding to recover possession of the premises, held, that the
first notice of renewal given by L. even if the signing and delivery thereof was
authorized by the various personal representatives of deceased tenants, which,
however, it appeared was not so authorized, was not a proper notice and having
been superseded by and merged in the notice which accompanied the proposed
new lease, there was an abandonment of the option of renewal as contained
in the original lease.

The contention of the alleged tenants that their exercise of the privilege of the
renewal extended the term of the lease for an additional seven years as a present
demise for the full term of fourteen years, the last half of which was to take

effect at the termination of the first at their option, and that a new lease was not necessary, held to be untenable.

*Orr* v. *Doubleday, Page & Co.*, 223 N. Y. 334, distinguished.

The proposed new lease having been executed and acknowledged by one who was the executrix and sole beneficiary under the will of her mother, one of the original tenants, but not as such executrix, the notice of renewal which accompanied the proposed lease might be held to have been properly executed were it not contingent upon the further renewal of seven years and she were the only person required to give notice, it being the well-settled rule of law that where a lease is made to two or more tenants jointly with covenant for a renewal for an additional term, such privilege cannot be exercised by one of them alone.

SUMMARY PROCEEDING to recover premises.

*H. S. & C. G. Bachrach* (*Abel E. Blackmar* and *Herman S. Bachrach*, of counsel), for landlords.

*Thomas F. Magner*, for tenants.

McLAUGHLIN, J. This is a summary proceeding to recover the possession of the premises 777–779–781 Manhattan avenue, in the borough of Brooklyn and city of New York.

Herman Goldberg and Gustave J. Goldberg are the owners of record in fee of said premises. On or about the 5th day of March, 1915, Emma M. Banker, individually and as executrix of the last will and testament of Edward Banker, deceased, and Sophie Banker White, they being at that time the owners in fee of said premises, entered into a lease in writing with Charlotte Case, Anna A. Dorsett, Elizabeth J. Brown, Emma Miller and William F. Taylor, executor and trustee of the last will and testament of Mary J. Palmer, deceased, for the term of seven years beginning on the 1st day of February, 1916, and ending on the 1st day of February, 1923, for the yearly rental of $750 in addition to taxes and water rates. During the term of said lease the tenants Charlotte Case, Emma Miller, Anna A. Dorsett and Elizabeth J. Brown died. Charlotte Case left a last will and testament which was duly admitted to probate. Louis L. Fosdick and William H. Mills were appointed executors of her said will and duly qualified. Legacies to the amount of $4,700 are given by said will. Ella F. Mills is the residuary legatee. There has been no accounting and there is no proof that the legacies have been paid or that there is any residuary estate. Ida M. Dorsett duly qualified as administratrix *de bonis non* of the estate of Emma Miller, deceased, and is now acting as such. Anna A. Dorsett left a last will and testament which was duly admitted to probate. William Himlyn was appointed executor thereof and duly qualified as such. Elizabeth J. Brown also left a will naming Elizabeth Egbertson executor, who duly qualified.

On the 10th day of October, 1922, and more than three months before the expiration of the said term, one Irad T. Lane served the following notice upon the petitioners, to wit:

" Herman Goldberg and Gustave J. Goldberg, Assignees of Emma L. Banker and Sophia Banker White:

" Gentlemen.— You will please take notice that the undersigned the lessees and their successors in interest in the lease between Emma L. Banker individually and as Executrix, etc., and others, with Charlotte F. Case, Anna A. Dorsett and others hereby give notice that they elect to take a renewal of the lease of the premises Numbers 777–779–781 Manhattan Avenue, Brooklyn, New York, for the term of seven years from the 1st day of February, 1923, upon all the terms and conditions stated in the existing lease and are willing and ready to arbitrate the rental to be paid therefore for the next period of seven years.

" Dated Brooklyn, October 10, 1922.

<blockquote>
" Yours very truly,<br>
" Estate of Charlotte Case,<br>
" Estate of Emma Miller,<br>
" Estate of Anna Dorsett,<br>
" Estate of Mary J. Palmer,<br>
" Elizabeth Egbertson,<br>
" By Irad T. Lane, *Agent.*"
</blockquote>

On the 17th day of October, 1922, the petitioners caused the following reply to be made thereto:

" Mr. Irad T. Lane,

" 118 Nassau Avenue, Brooklyn-New York:

" Dear Sir.— We have received from our client Mr. Goldberg a letter on your letter-head purporting to be signed by you as agent for the estates of Charlotte Case, Emma Miller, Anna Dorset and Mary J. Palmer and for Elizabeth Egbertson, on behalf of our clients we reject and return this paper on the ground that it is not a legal or sufficient notice for the following reasons, among others: *first*, that there is no evidence of your authority to act as agent for these estates, or for Mrs. Egbertson; *second*, that there is no legal right, power or authority on the part of these various estates to enter into a lease which will be binding on the estates; and, *third*, that the parties referred to are not under any circumstances entitled to a renewal of the lease. Very truly yours."

On the 31st day of October, 1922, and more than three months prior to the expiration of the term of the said lease the said Lane served upon the landlords, the petitioners, the following letter:

" Messrs. HERMAN & GUSTAVE J. GOLDBERG,
                    "887 Manhattan Avenue, Brooklyn, N. Y.:

" GENTLEMEN.— I hand you herewith the lease of the property
777–779–781 Manhattan Avenue to be executed by you as owner,
with the lessees who have signed the same and have exercised their
option to renew the lease now on the premises for the further term
of seven years from February 1, 1923.   If the rental named in the
said lease is not satisfactory we will submit the question of the
rental to arbitration as is provided in the existing lease.

                    " Yours very truly,
                              " FLORENCE B. LANE,
                              " IDA M. DORSETT,
                              " EMMA D. WHITE,
                              " IDA M. DORSETT, *Admrx.,*
                              " ELIZABETH EGBERTSON,
                              " MARY J. PALMER, EST.,
                                        " By IRAD T. LANE."

At the same time he submitted a proposed lease which except
for the term is identical with the original lease.   This lease con-
tains a renewal privilege in the same language as that of the original
lease.   It is signed and acknowledged by Florence P. Lane, Ida
M. Dorsett, Emma D. White, Ida M. Dorsett, Administratrix,
Estate of Emma Miller, Estate of Mary J. Palmer, by Irad T.
Lane, Agent, and Elizabeth Egbertson.

Florence P. Lane had an assignment of the interest of Ella F.
Mills, residuary legatee under the will of Charlotte Case.   The
lease contains a provision against assignment without consent of
the landlord in writing and there is no proof of such consent express
or implied.   The petitioners on the 31st day of October, 1923,
returned the said notice and the said lease with the following letter:

" Mr. IRAD T. LANE,
                    "118 Nassau Avenue, Brooklyn, New York:

" DEAR SIR.— We are returning to you herewith the paper
delivered by you to our clients, Messrs. Goldberg, purporting to be
a notice under lease of premises 777–779–781 Manhattan Avenue,
Brooklyn, and signed with various signatures by yourself in your
hand-writing.   This notice is returned to you for the reasons stated
in our former letter, and also because our clients are not obligated
to enter into a lease with the parties indicated in the notice.   We are
also enclosing your proposed lease, which our clients refuse to sign.
                    " Very truly yours,
                              " H. S. & C. G. BACHRACH."

The will of Anna A. Dorsett gives the residuary estate to Ida M. Dorsett and Emma White but there is no proof before me that there was any residuary estate or of an assignment of the interest of Anna A. Dorsett from William Himlyn, executor.

The so-called estate of Mary J. Palmer is a trust established under her will for the benefit of Florence B. Lane and Charles A. Palmer, whereby William F. Taylor is appointed trustee to manage and control and invest, etc., one-half of her estate and pay the interest therefrom to the said Florence B. Lane and Charles L. Palmer in equal shares during each of their natural lives with remainder over, etc.

Emma Miller, another of the tenants, died intestate. There is no proof as to her next of kin. The administrator of her estate also died and an administrator *de bonis non* was appointed in the person of Ida M. Dorsett. The testimony discloses that " she left a great many relations." She died before Anna A. Dorsett, for in the latter's will mention is made of her share in the estate of Emma Miller.

The first of the notices of renewal sent by Mr. Lane was signed in the names of the estates of Charlotte Case, Emma Miller, Anna Dorsett and Mary J. Palmer, by Irad T. Lane, agent, and Elizabeth Egbertson, by Irad T. Lane, agent. Mr. Lane testified that he knew Charlotte Case, Ida Dorsett, Emma White and William F. Taylor, who said that they wanted him to take care of collecting the rents and to take charge of the property; that he collected the rents, paid the ground rent and expenses and the balance over; that he spoke to those persons with regard to a renewal of the lease; that they said they wanted a renewal for seven years, as was in the original lease; that they prepared a renewal of the lease and sent it to Mr. Goldberg; that they told him to see Mr. Goldberg and submit the proposed renewal lease to him which was done and Mr. Goldberg disapproved of same. Mr. Lane sent another letter to the landlords, the Messrs. Goldberg, as above set forth, and with this letter a proposed lease. The signatures to said letter appear above. It will be noted that this letter accompanied the proposed lease and must be read with the same. It purports to be the exercise of an option to renew the lease " now on the premises for the further term of seven years from February 1, 1923," but the proposed lease provides for a further term of seven years from the expiration of such renewal term, making the election of renewal contingent upon the granting of a still further renewal. I consider this an abandonment of the option of renewal as contained in the original lease. The notice of October 10, 1922, was superseded by and merged in the notice of October 31, 1922.

accompanied by the proposed lease. The notice of election to renew must be unequivocal and unqualified and strictly according to the terms of the original lease. The alleged tenants contend, however, that they exercised the privilege of renewal and thereby extended the term of the lease for an additional period of seven years as a present demise for the full term of fourteen years, the last half of which was to take effect at the termination of the first, at the option of the defendant, and that a new lease was not necessary, citing *Orr* v. *Doubleday, Page & Co.*, 223 N. Y. 334. The situation there was different than in the present case. There, there was a written lease for a period beginning on November 1, 1904, and expiring October 31, 1914, " with the privilege to the said tenant for another term of ten years upon the same terms as are contained herein. But should the tenant elect to renew the within lease for said term of ten years, then and that event, it will, by a notice in writing notify said landlord, his heirs or assigns, at least ninety days prior to the expiration of the term hereby created, · of such intention to renew said lease." The tenant was prohibited from assigning the lease. In the instant case the original lease is written, contains a covenant against assignment and the following renewal clause:

" And the said parties of the first part, their heirs, executors, administrators and assigns hereby covenants and agrees to and with the said parties of the second part their executors, administrators and assigns, by these presents, that the said parties of the second part, their executors, administrators and assigns, paying the said yearly rent above reserved and performing the covenants and agreements aforesaid on their part, the said parties of the second part, their executors, administrators and assigns, shall, and may at all times during the said term hereby granted, peaceably and quietly have, hold and enjoy the said demised premises, without any manner of let, suit, trouble or hindrance of or from the said parties of the first part, their heirs and assigns, or any other person or persons whomsoever, *and. at the expiration of the term hereby granted (provided the parties of the second part shall have given a notice in writing to the party OF THE FIRST PART, At least . three months before the expiration of the said term, of a desire for a renewal of this lease)* the said parties of the first part, their heirs or assigns, *will execute and deliver* to the said parties of the second part, a *further lease* of said premises for the further period of seven years from the expiration of the term above granted, at such rate of yearly rent as may be mutually agreed upon between the parties; or in case of disagreement, then the amount of such rent shall be determined and fixed by two disinterested persons, one to be chosen

by the parties of the first part and the other by the parties of the second part; and in case of the disagreement of said two referees they shall select a third referee, and a decision by a majority of the three referees shall be binding upon the parties hereto."

This provides for the execution and delivery of a further *lease*, which was not the provision in the lease in the case above cited, and that this was the intention of the parties is made certain by their own interpretation of this covenant since it was first expressed in the original lease from Edward Barker to George Palmer. Each renewal as exercised has been by execution and delivery of a new lease. All of the data and history concerning these leases appear in the tenants' answer by way of a separate defense. The lease contains a provision as to disposition of buildings erected by the lessees during the term and also a provision as to the method of fixation of rent for the renewal term. These in themselves " evoke new conditions of continuance in occupation." A new lease was both necessary and proper. In any event the right or option to renew is personal property (Decedent Estate Law, § 80; Surr. Ct. Act, § 202; Code Civ. Pro. § 2672), likewise a lease for years. As personal property the same are deemed assets and as such go to the executors and administrators, to be applied and distributed as part of the personal property of the testator or intestate. Surr. Ct. Act, § 202. They are the proper parties to compel specific performance. *Despard* v. *Churchill*, 53 N. Y. 192; *Schmitt* v. *Stoss*, 207 id. 731; *Walker* v. *Bradley*, 89 Misc. Rep. 516. In order to bring about a renewal of the lease it remains for the surviving tenants and the personal representatives of those dead, to give a timely and proper notice of election to renew the lease and also, under the circumstances, to agree upon the terms thereof and execute the same. The executors or administrators must give this notice themselves. This is one of their powers. They cannot delegate it. Were the facts as in *Orr* v. *Doubleday, Page & Co.*, *supra*, they could not compel specific performance for the reason that the original lease was a present demise of the premises for a full term, the last half of which was to take effect upon the termination of the first, *no new lease for the additional years being necessary*. *Maisel* v. *Shanholt*, 189 App. Div. 831. The agent, Mr. Lane, who undertook to give the notice of renewal substituted his name as agent for certain estates. I do not regard that as a proper notice, even if the signing and delivery thereof was authorized by the various personal representatives of deceased tenants. It appears, however, that it was not so authorized. Mr. Lane testifies that Charlotte Case, Ida Dorsett, Emma White and William F. Taylor *all* told him " that they wanted a renewal " for seven

years, as was in the original lease. But Charlotte Case had died prior to August 20, 1919, and she was not a party in interest at the time of the attempted exercise of the right of renewal. William F. Taylor denied that he had any such talk with Mr. Lane. Ida Dorsett was but an administratrix *de bonis non* and the interest represented by her as well as that of Emma White would come by way of the will of their mother, Anna Dorsett, under which William Himlyn was executor and which estate is still in process of administration. Mr. Himlyn never authorized Mr. Lane to ask a renewal. Florence P. Lane claims her interest under an assignment from one Ella F. Mills who was residuary legatee under the will of Charlotte Case. But there are a number of legacies under said will and no proof of any residuary estate, etc. Furthermore there is no assignment from the executors and they do not join in the lease or notice. The tenants contend, however, that the second notice given at the time of the submission of the proposed lease was sufficient notice, even if Mr. Lane was not authorized to act as agent, because the proposed lease was executed and acknowledged by Elizabeth Egbertson, who under the will of her mother, Elizabeth J. Brown, was named as executrix and sole beneficiary. She duly qualified as executrix. She did not execute the proposed lease as executrix, but notwithstanding this I should hold the notice of renewal properly executed were it not contingent upon the further renewal of seven years and were she the only person required to give notice. It is well settled, however, that where a lease is made to two or more tenants jointly with covenant for a renewal or a privilege for an additional term, it cannot be exercised by one of them alone. 16 R. C. L. 898; *Finch* v. *Underwood*, L. R. 2 Ch. Div. 310; *Buchanan* v. *Whitman*, 76 Hun, 67; affd., 151 N. Y. 253; *Janes* v. *Pope*, 19 id. 324; *Foster* v. *Mulcahey*, 196 App. Div. 814. The notices were not signed by the parties entitled to the renewal. The giving of such notice is a condition precedent which must be performed before the right to a renewal may become vested. McAdam Landl. & Ten. (4th ed.) 593, 596; *Morgan* v. *Goldberg*, 9 Misc. Rep. 156. Some testimony has been offered as to the value of the buildings erected by George Palmer during the term of the first lease of said premises. It would seem that this proof is offered that the court may in this proceeding make some allowance to the tenants therefor or that the court may be impressed as to the value of these buildings in determining the equities between the parties. After the buildings were erected a new lease was executed and delivered and further leases have been executed and delivered and with parties landlord and parties tenant both varying. The only provision in these leases as to the buildings, and in each lease the provision is

the same, is as follows: " It is mutually understood and agreed that in case all rents and taxes and water rates are paid as aforesaid at the expiration of the term hereby granted, the parties of the second part shall within ten days thereafter have the privilege of removing from said premises all buildings and improvements by them placed thereon." The execution and delivery of a new lease and occupation thereunder for a further term and without reservation as to the buildings other than as aforesaid would seem to be a surrender of the buildings by the tenant to the landlord and the title thereto passed to the landlords Goldberg under the deed from the original landlord. Then again, the persons now claiming to be tenants have chosen to proceed to enforce a renewal and have not availed themselves of the privilege to remove the buildings if in fact they have any present existing rights thereunder. The testimony as to the value of the buildings does not impress me. Standing they have value; removed, the charges of a wrecker would be met. The tenants, however, make no claim for compensation for these buildings herein nor do they ask leave to remove them. If they believe that to be within the equitable jurisdiction of this court in this proceeding and in the present state of the pleadings, which I seriously doubt, then I should find no right to compensation to them for the buildings and no right to remove the buildings. The original lease under which the tenants claim that they are entitled to a renewal by reason of the alleged notice aforesaid makes the further provision, *i. e.*, " Provided, further, however, that the said parties of the second part shall in no case be entitled to receive a further lease as aforesaid unless all the rents, taxes and water rates upon said premises as heretofore stipulated, shall, at the expiration of the term hereby granted have been fully paid and discharged by the said parties of the second part." No proof has been offered as to performance or non-performance of this condition. Attention has been called to the judgment in a prior proceeding which inadvertently fixed the date of expiration of the original lease as March 31, 1923. This pending proceeding was not instituted until April 9, 1923, or later. Considerable stress has been laid upon alleged dereliction of duty on the part of the trustee under the will of Mary J. Palmer, it being claimed that he will profit at the expense of the estate if the landlord prevail here by reason of the fact that he as executor and trustee has failed to join in the notice of renewal. There has been litigation involving this matter (*Palmer* v. *Taylor*, 201 App. Div. 422; 235 N. Y. 367) but not determinative of the questions raised in this proceeding. An executor or trustee may exercise his discretion as to whether or not he will take upon himself the responsibility of a renewal of a lease;

and the exercise of an option therefor. If he fail in any duty or obligation to his estate to the damage of the estate, relief may be had against him upon his accounting and not in this proceeding, nor can that question be determined here.

Judgment for the landlord. Let final order issue.

Judgment accordingly.