[Civil No. 2723. Filed January 14, 1929.]

[273 Pac. 534.]

HATTIE L. MOSHER, Appellant v. JOHN SABRA and MARY E. WINTERMUTE, as Administratrix of the Estate of GEORGE J. C. WINTERMUTE, Deceased, Appellees.

Mr. J. C. Niles and Mr. John W. Ray, for Appellant.

Messrs. Flanigan & Fields, for Appellees.

ROSS, J.—This action was brought by Hattie L. Mosher against John Sabra and Mary E. Wintermute, as administratrix of the estate of George J. C. Wintermute, deceased, upon two counts, for rent of building known as 301–303 North Center Street in the city of Phoenix. The first count is for four months' rent, as per the terms of a written lease, at $412.50 a month, or $1,650. The second count is for rent at the same rate for holding over and retaining possession of premises for eleven months after the expiration of the term of the written lease, or for $4,537.50. The lease contained no provision for renewal or for an extension.

The case was tried to the court without a jury, and upon findings of fact and conclusions of law judgment was entered against both defendants for the balance of the rent due under the written lease, and against Sabra only for the holdover period of eleven months. The plaintiff, Mosher, has appealed, and assigns as error the refusal of the court to give her judgment against the defendant administratrix for the holdover period.

The correctness of the court's findings of fact is not questioned by either of the parties, nor did either request any additional findings. Such being the case, our review will be confined to the facts so found. 4 C. J. 656, § 2548; *County of Pinal* v. *Heiner,* 24 Ariz. 346, 209 Pac. 714.

The first finding is that the written lease was to the defendant John Sabra and George J. C. Wintermute for two years and five months, or from March 1, 1921, to August 1, 1923, at $375 a month, ten per cent to be added if not paid within five days after due, or, with the penalty, $412.50 a month. The other findings were:

"(2) That the lessees, Sabra and Wintermute, went into possession and occupied the premises in a business venture first known as Coats Tire House, then as Sabra Rubber Company, and later as Dayton Rubber Company, but the dates of the change of name are not clear.

"(3) That some time in March, 1922, about a year after the beginning period of the lease, Wintermute sold his interest in the business to Sabra, who was his son-in-law, and thereafter Wintermute ceased to have any interest in the business. Of this sale by Wintermute and the purchase by Sabra, the plaintiff Mosher had no notice. The business was all the time under the active management and control of Sabra the same after this sale as before it had been, Wintermute never having been active in the business, its management or control.

"(4) The monthly rentals were paid up to April 1st, but were not paid for the last four months of the contracted lease term. That there is due under the lease contract four months rental at four hundred twelve and one-half ($412.50) dollars per month, total of sixteen hundred and fifty ($1,650.00) dollars.

"(5) That after the termination of the lease term, that is, August 1st, 1923, the defendant Sabra continued to occupy the premises, the same as before the termination under the same name as before and doing the same business as before and without any other or further contract with the plaintiff than the original for a period of eleven (11) months, or up to July 1st, 1924, when the premises were surrendered to the plaintiff and Sabra vacated.

"(6) That for this period of eleven (11) months held without express contract subsequent to the original lease contract the rental is the same as in that contract, four hundred twelve and one-half ($412.50) dollars per month."

We have already given the court's conclusions of law, based upon the found facts. Under these facts, was Wintermute, and since his death is his estate, liable for the rent that accrued during the holdover period of eleven months? The premises were rented

to him and Sabra jointly, and under his covenant to pay rent he was liable, whether he occupied them or not for the full term of the lease, or until August 1, 1923, but his contract obligation expired on that day. If he is liable for rent for the holdover period, it must be from the simple fact that he jointly leased the premises with Sabra, and when his obligation under the lease expired failed to notify the landlord that he no longer occupied or retained the premises, or it must be because of his relation to Sabra his administratrix is estopped to deny that Sabra's occupation and possession were not also his.

In *Parker* v. *Page,* 41 Or. 579, 69 Pac. 822, it is stated that the relation of the landlord and tenant, where the latter holds over, is contractual. We quote from that decision the general rule as there stated:

"By the very great weight of American authority, where there has been a leasing for a year, or for a term of years, and a holding over after the term with the tacit acquiescence of the landlord, the relationship and agreement of the parties is converted into a technical tenancy from year to year. This result springs from the act of the tenant in holding after the term, by which he becomes a trespasser, and the landlord's recognition of his lawful right to continue, by which the tort is waived; and the law implies a contract of further leasing—that is, from year to year—upon the same terms and conditions contained in the expired lease. It is optional with the landlord whether to treat the continued holding as a trespass or to regard the act of the tenant as lawful, and the tenant has no alternative but to abide his determination."

This rule in its fullness is not the rule in this state, although the principle upon which it is founded is basic. Under our statute, yearly tenancy terminates at the end of the year, unless written permission is given the tenant to remain for a longer and fixed period. Tenancies from month to month terminate at once for failure to pay rent and on ten days' notice

from the landlord in all other cases, and when the tenancy is for a certain period the tenant is "bound to surrender possession" at its termination, and no notice to quit or demand of possession shall be necessary. Par. 4714, Civ. Code 1913. These provisions, however, being in favor of the landlord, he no doubt, if the tenant does hold over, may waive them and also the tort, and permit the tenant to continue in possession, in which event the tenancy is fixed by paragraph 4715, Civil Code, reading:

"When the lessee or tenant of any real estate, or any interest therein, holds over and retains possession thereof after expiration of the term of the lease without express contract with the owner, such holding over shall not operate to renew the lease for the term of the former lease, but in every such case, the tenancy shall be deemed from month to month."

When the tenant holds over, the law raises a contract, or, acting upon the situation created by the parties, the law makes for them a compact with correlative obligations, which they cannot disregard without incurring liability, and there springs from the situation a mutuality, a meeting of the minds, as much as though there were an express assent on both sides to the contractual relations. *Parker* v. *Page, supra.* The occupancy and possession of the premises here for the holdover term was by Sabra alone, and therefore the mutuality the law recognizes is between him and the landlord. We know of no rule of law that empowers one of two tenants to make a contract to lease premises for or on behalf of the other tenant, or to create a situation wherein the law would impose an obligation on the other to pay rent, he having never occupied or retained possession after the expiration of the joint lease. It is true the case of *Fronty* v. *Wood,* 2 Hill, 367 (book 9 S. C. 203), in a syllabus opinion, states that the holding over by one of two tenants will be presumed to be

by both, and, apparently, this case stands alone in that regard. The facts are not set out in the opinion, and no authority for the rule is given. In *Foster* v. *Mulcahey*, 196 App. Div. 814, 188 N. Y. Supp. 151, the court, after stating the holding in *Fronty* v. *Wood*, said: "With all due deference to the authority of the South Carolina Court, we do not believe that is the correct doctrine in this state."

In the Foster case, one of two tenants held over, and the contention was that both of the tenants, the one not holding over as well as the one that did hold over, were liable for the rents. The court quoted from *Herter* v. *Mullen*, 159 N. Y. 28, 70 Am. St. Rep. 517, 44 L. R. A. 703, 53 N. E. 700, the principle upon which the liability of a tenant holding over is founded, as follows:

"The principle upon which the rule is founded is that the holding over is such an act of the tenant that the law implies a contract on his part, or leasing of the premises for another year. But whenever the law implies a contract from the act or conduct of the party, the act itself, whatever it may be, *must be voluntary*" (italics ours), and thereafter said:

"Where there are two tenants, in order that they may make a new contract by exercising an option, it must be done by their united action, either by giving such notice or by jointly holding over, and thus raising the implication that they have made such election. But Mulcahey was clothed with no power or authority to give notice, or by any act of his to bind Stewart to a renewal, and thereby create for him a new contract and liability. It took joint action of the two to make the lease, and it would take their joint action to renew it. Stewart never gave notice that he desired to exercise such option, nor participated in any act purporting to renew the lease. Unless Mulcahey was an agent, with power to sign Stewart's name to a notice renewing the lease, he had no power to bind him by remaining on the premises, for no one method of giving notice of the exercise of an option has greater force or sanction than any other."

In other words, the contract the law will imply arises from the *voluntary act* of the parties. In *Goldberg* v. *Himlyn,* 121 Misc. Rep. 580, 201 N. Y. Supp. 837, it is said:

"It is well settled, however, that where a lease is made to two or more tenants jointly., with covenant for a renewal or a privilege for an additional term, it cannot be exercised by one of them alone. 16 R. C. L. 898; *Finch* v. *Underwood,* L. R. 2 Ch. Div. 310; *Buchanan* v. *Whitman,* 76 Hun 67, 27 N. Y. Supp. 604, affirmed 151 N. Y. 253, 45 N. E. 556; *James* v. *Pope,* 19 N. Y. 324; *Foster* v. *Mulcahey,* 196 App. Div. 814, 188 N. Y. Supp. 151."

The rule here announced is recognized as correct in principle in the text-books and in other jurisdictions. 16 R. C. L. 898, § 403; *Howell* v. *Behler,* 41 W. Va. 610, 24 S. E. 646; *Tweedie* v. *P. E. Olson Hardware & Furniture Co.,* 96 Minn. 238, 104 N. W. 895, 1089.

Paragraph 4714, *supra,* provides that, "when the tenancy is for a certain period, and the time expires by the terms of the lease, the tenant shall then be bound to surrender possession and no notice to quit or demand of possession shall be necessary. . . . "

Under this provision, when the lease of two years and five months to Sabra and Wintermute expired, neither the landlord nor the tenants could continue it. The tenant or tenants were *bound* to surrender possession. In the absence of an actual surrender, there arose, however, a technical tenancy from month to month as provided in the next succeeding paragraph (4715), but, of course, if there was an actual surrender by either of the two original tenants, as to the one so surrendering there could be no monthly tenancy thereafter. The court's finding is that "Sabra continued to occupy the premises" after the termination of the lease term, and not Sabra and Wintermute. It seems to us, in the absence of a finding that Wintermute violated the term of the statute *binding* him to sur-

render, we should asume that he observed the law and gave up possession at the expiration of his lease.

The appellant, in her brief and at the hearing, argued that Sabra and Wintermute were partners, and that the latter permitted himself to be held out as such, and that he is now estopped from denying Sabra's power to bind him for rent by the holdover. Whether this contention is sound, or not, we need not and cannot decide. There is no suggestion in the pleadings that Sabra and Wintermute were partners, and there is certainly no finding to that effect. Whether Coats Tire House, or Sabra Rubber Company, or Dayton Rubber Company were partnerships or corporations, or something else, is left to conjecture.

Sabra held over eleven monthly terms, committed eleven technical trespasses, all of which were condoned or waived by the appellant, and, whatever she may have done toward trying to collect these monthly rentals from Sabra, the findings negative any effort to collect such rentals from Wintermute until after the premises were vacated by Sabra and Wintermute was silenced by death, and then the claim was filed against his estate. We think the general rule governing renewals and holdovers, as announced in the forepart of this opinion, should govern in this case.

The judgment of the lower court is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.