[Civil No. 3723. Filed March 15, 1937.]

[65 Pac. (2d) 1373.]

M. W. EASON, Appellant, v. H. E. HEIGHTON, Appellee.

238

Messrs. Duffy & Robins, for Appellant.

Messrs. Conner & Jones, for Appellee.

ROSS, J.—In 1932 M. W. Eason, of Jenkintown, Pennsylvania, plaintiff, owned a ranch property and some live stock in Santa Cruz county, Arizona, which he listed with H. E. Heighton, defendant, a licensed realtor, of Tucson, Arizona, for sale. In October of that year defendant, Heighton, received from one W. W. Hodgman, Jr., whom he had contacted as a purchaser or prospective purchaser of said property, $500

as part payment of the purchase price, as he contends, but, as contended by plaintiff, Eason, as an advance on an option to buy said property. Later on Hodgman paid $500 more on the same terms and conditions. Hodgman, upon the payment of the first $500, went into possession of the property and made considerable improvements thereon but, not being able to raise the money to pay the balance of $7,000, agreed to be paid, he surrendered the property back to defendant as the agent of the plaintiff and abandoned all claim to the return of the $1,000.

The parties not being able to agree on the commission defendant should receive for his services, this action was commenced by plaintiff for the $1,000 and interest at 6 per cent. as for money had and received by defendant for the account of plaintiff. The issue, then, at the trial was whether the transaction with Hodgman was a contract of sale or an option. If Hodgman was a purchaser of the property, the defendant, who secured him as such, would be entitled to his full commissions which it is agreed would be 10 per cent. of the purchase price of $8,000; but, if only an optionee, he would, if compensable at all, receive a very different sum.

The court found as a fact that the defendant procured Hodgman to execute the following instrument, to wit:

"H. E. Heighton, Realtor
"Real Estate—Insurance—Rentals—Loans
"31 So. Scott St. Phone 265.
"$500.00 Tucson, Arizona,
"October 25, 1932.

"Received of W. W. Hodgman, Jr., purchaser, the sum of five hundred & no/100 dollars ($——) as part of purchase price on the following described property:
"The M. W. Eason Ranch also known as the Sunset

Pass Ranch, being a part of Sections 8, 9, and 17 in Township 22 South, Range 18 East, containing 231 acres more or less; together with all livestock and ranch equipment belonging to M. W. Eason which for account of and as agent for the owner, the undersigned has this day sold to the above named purchaser, subject to acceptance of the owner and merchantable title, at the price and under the terms and conditions herein set forth. Conveyance shall be subject to any reservations or exceptions contained in State or Federal patents, to any race or building restrictions of record, and to existing Zoning Ordinance of the City of Tucson.

"Price shall be Eight Thousand and no/100 Dollars ($8,000.00).

"Terms shall be as follows: $8,000.00 cash, on closing sale (which includes above deposit).

"All taxes, insurance premiums, interest on assessments, all mortgage interest, rentals and water rents shall be pro rated as of date of closing sale. Purchaser shall assume balance payable on all assessments as same now exist —— None.

"H. E. HEIGHTON, Realtor.

"By [Signed]   H. E. HEIGHTON.

"The undersigned purchaser hereby agrees to purchase the above described property at the price and under the terms and conditions hereinabove set forth. You are hereby given —— day— to obtain the owner's acceptance of this sale. If owner's acceptance is obtained within said period, then this instrument will become a binding obligation on the purchaser's part, and in the event of any default on the purchaser's part all sums paid by purchaser shall be forfeited as liquidated damages. After delivery of abstract or title insurance policy to purchaser 10 days shall be allowed for examination and closing sale.

"[Signed]   WM. W. HODGMAN, Jr.

"——, 193—.

"I or We hereby agree to sell the above described property to the above named purchaser or his assigns at the price and under the terms and conditions hereinabove set forth, to furnish at our expense a complete abstract of title or owner's title insurance policy. and showing merchantable title thereto and to pay the

regular commission as provided by the Real Estate Board of Tucson, and sale expenses.

"_____.

"_____.

"Accepted by telegram.
"(Form adopted by the Real Estate
Board of Tucson)."

The court also found that before said contract was executed defendant wired plaintiff, at the latter's home in Pennsylvania, as follows:

"Showed ranch this afternoon  No furniture and little or no equipment in evidence   Have offer of Eight Thousand cash subject to real estate board commission Deposit on acceptance   Wire answer   Sale subject to merchantable or insurable title.   H. E. Heighton for W. W. Hodgman, Jr.," and that plaintiff answered such telegram "Close deal."

From the findings the court concluded that the transaction was a sale of the property and not an option; that the defendant had authority from the plaintiff to make the contract and, having fully performed his contract was entitled to 10 per cent. of the sale price, or $800, and to be reimbursed for expenditures for an abstract of title and the opinion of an attorney thereon in the sum of $55; and gave judgment to plaintiff for $200, less $55.   Plaintiff has appealed.

The assignments are that the court erred (1) in not giving plaintiff judgment for the $1,000 with interest, less $55 expenses for abstract of title and attorney's fee, for the reason the contract was intended by the parties to be an option only and defendant was not entitled to any commissions unless a sale was effected; and (2) in not giving plaintiff judgment for one-half of the $1,000, after deducting $55 expenses as above, it being the prevailing local custom, in the absence of agreement between the property owner and broker, to divide equally forfeited payments on sales.

To consider these assignments, we would have to overlook or disregard the court's findings of fact as they are predicated upon evidence entirely different from that supporting the findings by the court. We think under our rules and decisions, when the trial court makes written findings of fact and conclusions of law separately, as provided in section 3819, Revised Code of 1928, we should treat such findings of fact as supported by the evidence until in the proper manner it is made to appear otherwise. The plaintiff requested the court to make findings of fact and submitted to the court findings for its consideration in accordance with his contention that the contract was only an option. It seems to us that, if it be true that the court's findings are not supported by the evidence, an assignment to that effect should have been made; but none has been made, nor is it assigned that the court erred in not adopting plaintiff's set of findings. We have frequently decided that the court's findings of fact will be accepted as sustained by the evidence in the absence of assignment challenging such findings. In *Tennery* v. *Tennery*, 35 Ariz. 69, 274 Pac. 638, we said:

"The next assignment is directed at the sufficiency of the evidence to support the decree. On that issue the court made a finding to the effect that each and every allegation of cruelty of the wife's cross-complaint was true. This finding is not assigned as erroneous or unjustified by the evidence. The rule is that, where the court makes findings of fact, we will not look into the evidence for the purpose of determining its sufficiency upon an assignment that ignores the findings but challenges generally the sufficiency of the evidence. Where there are findings, we will accept them as being fully supported by the evidence, unless they are challenged by proper assignment. *Joslin* v. *Stewart*, 28 Ariz. 585, 238 Pac. 390; *Mosher* v. *Sabra* [34 Ariz. 536] 273 Pac. 534."

In *Mosher* v. *Sabra,* 34 Ariz. 536, 273 Pac. 534, we said:

"The case was tried to the court without a jury, and upon findings of fact and conclusions of law judgment was entered against both defendants for the balance of the rent due under the written lease, and against Sabra only for the holdover period of 11 months. The plaintiff, Mosher, has appealed, and assigns as error the refusal of the court to give her judgment against the defendant administratrix for the holdover period.

"The correctness of the court's findings of fact is not questioned by either of the parties, nor did either request any additional findings. Such being the case, our review will be confined to the facts so found. 4 C. J. 656, § 2548; *County of Pinal* v. *Heiner,* 24 Ariz. 346, 209 Pac. 714."

In *Joslin* v. *Stewart,* 28 Ariz. 585, 238 Pac. 390, 391, we said:

"No assignment of error was made as to the sufficiency of evidence to support the finding, and we are therefore precluded from considering this point. *Daggs* v. *Phoenix National Bank,* 5 Ariz. 409, 53 Pac. 201; *Pinal County* v. *Heiner,* 24 Ariz. 346, 209 Pac. 714; Rule 12, § 1, Supreme Court of Arizona."

In *County of Pinal* v. *Heiner,* 24 Ariz. 346, 209 Pac. 714, 717, we said:

"If, in the view of any appellant, one or more of the findings is not justified by the evidence, and he wants it or them reviewed, it is necessary for him to point out in his assignment or assignments the particular ruling or rulings complained of, with sufficient fullness that the 'court and opposing counsel may be clearly informed' as to what he relies upon for reversal, otherwise his objections to the findings will not be considered on appeal. *Andrade* v. *Andrade,* 14 Ariz. 379, 128 Pac. 813."

Under these rulings, there is no alternative but to accept the trial court's findings of fact. The law is well settled that a broker employed to sell realty is

entitled to his commissions when he finds a purchaser able, willing, and ready to take and pay for the property on the terms and conditions as fixed by the owner. In the recent case of *Lockett* v. *Drake,* 43 Ariz. 357, 31 Pac. (2d) 499, 500, we stated the rule as follows:

"It is the almost universally-accepted rule of law that, in the absence of a specific contract to the contrary, when a real estate broker has brought together the parties to a sale or exchange of real estate, and they have agreed fully on the terms and entered into a binding contract for such sale or exchange, his duties are at an end and his commission is fully earned, and it is immaterial that the parties to the contract rescind mutually or that one or the other thereof defaults and the sale or exchange is not fully effected. *Clark* v. *Adams,* 39 Ariz. 257, 5 Pac. (2d) 413; *Clark* v. *Matley,* 39 Ariz. 263, 5 Pac. (2d) 415; *Severin* v. *Latz,* 36 Ariz. 496, 287 Pac. 300; *Jauman* v. *McCusick,* 166 Cal. 517, 137 Pac. 254."

■ There can be no question but that the plaintiff could have compelled Hodgman to specifically perform his contract to pay the balance of the purchase price of $7,000, or that Hodgman could have compelled conveyance to him by tendering the balance of the purchase price. The fact that the parties rescinded the contract and plaintiff released Hodgman from its fulfillment would not affect the defendant's right to his legal commissions.

■■ But it is uncontroverted that, when it became evident that Hodgman was not going to be able or was not willing to pay the balance of the purchase price, he, the plaintiff, and the defendant treated the transaction as one entitling the plaintiff to the return of his property, with the right to retain whatever had been paid thereon and improvements as forfeited. The settlement on this basis was carried on by defendant. None of them wanted a lawsuit. The defendant, who was on the ground and in charge of the transaction for

plaintiff, actively advised against litigation with Hodgman to enforce the contract. Having advised his principal to abandon the contract which, if performed, would have given him his full commission of $800, it seems to us that defendant waived his right to claim such commission. On the other hand, the transaction was not and should not be treated as an option, for in that event he would not be entitled to any compensation for his labors. *Warnekros* v. *Bowman,* 14 Ariz. 348, 128 Pac. 49, 43 L. R. A. (N. S.) 91. The services defendant rendered in adjusting and settling the contentions of the owner and the purchaser, so as to avoid litigation, were not included in his contract to find a purchaser for plaintiff's property, but for such services he certainly is entitled to reasonable compensation. 9 C. J. 580, § 78.

Defendant in his answer asserts that the local custom in the community where this transaction occurred is, when a purchaser of real property under a contract of sale defaults through no fault of the broker and forfeits any deposit thereon, to divide the deposit equally after deducting expenses incurred, and asks, if the court finds he is not entitled to his full commission of 10 per cent. on $8,000, that he be allowed $472.50, or one-half of the $1,000 after deducting the expenses. The plaintiff concedes the local custom and asks, if the court finds he is not entitled to all of the $1,000 less expenses, that the $1,000 be divided, after deducting expenses, equally between them.

There being no dispute as to the local custom, and the law being that defendant should be compensated for the reasonable value of his services, the judgment of the lower court will be vacated and set aside and the cause remanded, with directions that judgment be entered for the plaintiff, with interest from date of filing the action, for an amount equal to one-half of the $1,000 after deducting expenses of $55, with a fur-

ther deduction of one-half of a loss sustained through the failure of the United Bank & Trust Company, of Tucson, in which defendant had deposited $600 of said $1,000.

The defendant as agent of the plaintiff was required to exercise ordinary care, or such as a prudent person would exercise under the same circumstances, in safely keeping the $1,000, but he was not an insurer of such funds. 3 C. J. S., Agency, p. 38, § 159. It appears defendant believed enough in the financial stability of the bank to deposit his own money therein, and there is nothing of record to indicate that he was not cautious and prudent or that in making such deposit he acted other than in perfect good faith. Under such circumstances, the loss should be equally shared.

McALISTER, C. J., and LOCKWOOD, J., concur.