[Civ. No. 1726.    Third Appellate District.—December 13, 1917.]

## J. K. KENDRICK, Respondent, v. CHARLES HANSEN, Appellant.

BROKER'S COMMISSIONS—EVIDENCE—CONVERSATIONS INADMISSIBLE.—In an action to recover commissions on the sale of real property, conversations between the plaintiff and the defendant at the time of entering into the written contract are inadmissible.

ID.—RIGHTS UNDER CONTRACT—INSTRUCTION—ADMISSIONS OF DEFENDANT.—In an action to recover broker's commissions on the sale of real property, an instruction that it is admitted that the defendant executed the contract and that it had not been revoked in writing at the time the defendant sold the property, but that it could have been revoked even without the broker's consent under its terms after the date therein specified, is not erroneous where the defendant admitted the signing of the contract, that it had never been revoked in writing, and the contract showed on its face that it could not be revoked without the consent of the broker before a certain date.

APPEAL from a judgment of the Superior Court of Glenn County, and from an order denying a new trial. Wm. M. Finch, Judge.

The facts are stated in the opinion of the court.

Duard F. Geis, for Appellant.

Frank Freeman, for Respondent.

CHIPMAN, P. J.—Plaintiff brings the action to recover commissions on the sale of certain real estate alleged to belong to defendant. It is alleged that at all the times mentioned in the complaint the plaintiff M. E. Jacoby and E. E. Avery were copartners doing business "under the firm name and style of Kendrick, Jacoby & Avery, in the county of Glenn," and were engaged in the business of buying and selling real estate. That on June 7, 1912, the said copartners entered into a certain contract in writing with defendant, a copy of which is appended to the complaint and made part thereof. By the terms of this agreement, this firm was employed as "the sole and exclusive agents to sell" for defendant certain real property described in the agreement, and defendant agreed to convey said property, alleged as consisting of 2,159 acres, "to any purchaser or purchasers obtained by the said Kendrick, Jacoby & Avery, for the sum of forty dollars per acre, or for any less sum hereafter agreed upon" by defendant. The agreement, among others, contained the following provision:

"This employment and authorization shall continue for a period of four months from the date hereof and during said time is irrevocable and shall continue after said time until withdrawn by me by ten days' notice in writing; and I agree to pay to the said Kendrick, Jacoby & Avery, in the event of the sale of said property by said agents, or by anyone else, or by myself, while this contract is in force, a commission of seven and one-half (7½) per cent on the above named amount as said agents compensation to service herein, and I further agree that any sum obtained by the said Kendrick, Jacoby & Avery for said lands over and above the amount herein stated may be divided equally between the said Kendrick, Jacoby & Avery and myself. Terms $25,000.00 cash, balance one, two and three years at six per cent. In witness whereof, I have hereunto set my hand and seal this 7th day of June, 1912.          (Signed) CHAS. HANSEN."

It is alleged in the complaint that the said firm "spent a great deal of time and much money in an endeavor to secure a purchaser for the said property, and in the course of the endeavors of said copartnership referred many prospective purchasers to defendant herein." That on or about May 24, 1913, defendant "personally sold the real property hereinabove described, together with the improvements thereon, as

plaintiff is informed and believes, for the sum of one hundred and seven thousand nine hundred and fifty ($107,950.00) dollars, and the purchaser was one who became interested in the purchase of said property through the instrumentality of the said copartnership." That prior to the commencement of this action for a valuable consideration, the said M. E. Jacoby and the said E. E. Avery sold, assigned, and transferred to plaintiff all their right, title, and interest in and to said contract and the proceeds thereof, and the plaintiff is now the owner and holder of said contract. That at the time of the sale above referred to, the contract herein set forth between the said copartnership and defendant was in full force and effect, and the same has never been withdrawn.

It is then alleged that the commission due plaintiff under the said contract amounts to the sum of $17,262.00. That plaintiff has demanded payment of the same from defendant, but defendant has refused and still refuses to pay the same or any part thereof.

A general demurrer was overruled and defendant answered: On information and belief, denied the existence of the alleged copartnership, and denied that it was engaged in the business alleged in the complaint. There is an allegation in the answer that the name of the alleged copartnership was fictitious and does not disclose the name or names of the persons interested in said business, and alleged other facts apparently with the view of making the defense that neither the said firm nor the plaintiff, as assignee thereof, could maintain the action. This issue seems to have been abandoned and need not be further noticed.

Denied that he entered into the contract set out in plaintiff's complaint. Denied on information and belief that the said firm, or any of them, "did a great deal or any work, or spent a great deal or any time, or money, in an endeavor to secure a purchaser for the property described in said complaint." Denied that he, on the twenty-fourth day of May, 1913, or at any time, personally or otherwise sold the said real property described in plaintiff's complaint for any sum or sums greater than $45 per acre, and alleges the fact to be that on said date he sold the said real property for the sum of $45 per acre, "and out of which said sum so received by the said defendant, the said defendant received from said sale a sum net to him of eighty-eight thousand four hundred and fifty-eight and

34/100 dollars for the said land, and no more.'' Denied the alleged assignment of said contract by said copartners to plaintiff. Denied that at the time of said sale the said contract was in force or effect or at all, and denied that the said contract had not been withdrawn, and alleged in relation thereto that at the time of the sale of said property there was no contract of any kind existing between the said firm, as copartners, individuals, or otherwise, and this defendant wherein the said copartners or either of them was or were in any way ''authorized to sell or to in any way enter into negotiations for the sale of the said land or any part thereof,'' and denied that the purchaser of said real estate was one who became interested in the purchase thereof through the instrumentality of said alleged copartners. Denied that there is any commission due plaintiff, and alleged that there is no commission due of any kind to anyone under said contract.

The averments of the answer hereafter to be stated appear as part of the original answer, but it appears by stipulation in connection therewith that in fact these averments were an amendment to the original answer made by leave of court at the time of the trial. By these averments it is alleged that on June 7, 1912, defendant ''did authorize the said Kendrick, Jacoby, and Avery to sell for the said defendant [then follows a description of the property containing 2,159 acres, more or less], wherein the said defendant agreed to convey the said property, etc.,'' for the sum of $40 per acre, setting forth thereafter the provisions of the said contract, and alleging that there was indorsed on said contract as a part thereof, the following: ''Expires October 7, 1912.'' Alleged that during the life of said authorization the said copartnership ''waived that portion of the said authorization wherein it was provided that the same should continue after the period of four months until withdrawn by defendant by ten days' notice in writing, and the said defendant agreed to and accepted said waiver, and which said waiver was so made and accepted long prior to the time of the sale of the said land made by the defendant herein, to wit, long prior to the twenty-fourth day of May, 1913.'' Alleged that after the signing of said authorization for the sale of said land and during the life of the said authorization, the said Kendrick, Jacoby & Avery ''did rescind that portion of said authorization providing for the continuance of said authorization, after four months from

the date of said authorization 'until withdrawn by defendant by ten days' notice in writing,' and notified this defendant that the said authorization, so made by said defendant to the said Kendrick, Jacoby & Avery for the sale of said land, expired on the seventh day of October, 1912, which said rescission so made was accepted by defendant and so acted upon by defendant with full knowledge on the part of said Kendrick, Jacoby & Avery long prior to the sale of said land by the defendant.'' That after the said waiver and rescission above referred to the said Kendrick, Jacoby & Avery ''sought to secure of and from the said defendant another authorization for the sale of the said land which the said defendant refused, and has at no time given.'' Alleged that at the time of said sale by defendant neither of the said partners had any contract of any kind for the sale of said lands, and that the only authorization of any kind ever given by defendant to them or either of them for the sale of said land expired on October 7, 1912.

For further answer, and as a further defense, defendant alleged that at the time the said contract was presented to defendant for his signature he stated to plaintiff that he would not give a longer time than four months within which the said firm would be authorized to sell the said lands, and refused to sign the said agreement because it contained the clause, ''and shall continue after said time until withdrawn by me by ten days' notice in writing.'' That plaintiff represented to defendant that the form of contract presented was one adopted by the members of the real estate association, ''and then and there falsely, fraudulently and for the purpose of deceiving, defrauding, and inducing this defendant to sign the said agreement in form as presented, represented and stated to this defendant that they, Kendrick, Jacoby & Avery, only wanted and intended the said agreement to be, and that the said agreement would be operative for the period of four months from said date and no longer; that they then had a purchaser for the lands, and if they did not make a sale of said lands within the four months, they would quit and the said agreement was at an end.'' Alleged that at the time of the making of said statement, plaintiff ''had no intention whatever of carrying the same out.'' That, relying upon said representations, defendant signed the said agreement, but would not have done so if said false and fraudulent statements

had not been made. That said false and fraudulent statements were so made by the plaintiff for the purpose of defrauding defendant "and to cause this defendant to rely thereon, and for the purpose of having the said agreement extended, in its operation, beyond the said period of four months, and as in the said agreement provided, without the knowledge of this defendant. That by reason of the false and fraudulent representations and statements so made by said plaintiff to this defendant, and in thus securing this defendant to sign and deliver the said agreement as herein set out, the said plaintiff intended to and did perpetrate a fraud upon this defendant, and this defendant was and is defrauded thereby." Wherefore defendant prays that plaintiff take nothing by the action.

The cause was tried by the court with a jury, and a verdict was rendered in favor of plaintiff for $6,477, and judgment was accordingly entered by the court. Defendant appeals from the judgment and from the order denying defendant's motion for a new trial.

There was evidence sufficient to justify the jury in finding: That the contract set out in the complaint was executed by defendant and delivered to the parties therein named as contractees, and that they were then copartners doing business in buying and selling lands as real estate agents; that they were actively engaged from the date of said contract in an endeavor to find a purchaser for said land and continued their efforts to that end until January or February, 1913; that the copartnership was dissolved as to its business generally about February, 1913, but that the partnership continued and there were reserved as still part of its unfinished business certain contracts in which each of the partners retained an equal interest, including the contract with defendant; that defendant at no time gave the firm or any of its members written notice that he had withdrawn or desired to terminate said contract, and that on May 24, 1913, he personally sold the land for the consideration of $45 per acre, and as he alleged in his answer, "out of which sum . . . the defendant received from said sale a net sum to him of $88,458.34, and no more"; that prior to the commencement of the action, Jacoby and Avery assigned all their right to and interest in said contract to plaintiff. The defense on which defendant relies arises out of matters set forth in the answer as follows: That the contract bore an

indorsement, "and as a part thereof the following, expires 'October 7, 1912' ''; that Kendrick, Jacoby & Avery waived that portion of said contract reading "that the same should continue after the period of four months until withdrawn by defendant by 10 days' notice in writing''; that defendant "agreed to and accepted said waiver which said waiver was so made and accepted long prior to the time of the sale of the said land made by defendant herein, to wit, long prior to the twenty-fourth day of May, 1913''; that said Kendrick, Jacoby & Avery rescinded that portion of said contract above referred to during the life of said contract; that after said waiver and rescission and said acceptance, the said Kendrick, Jacoby & Avery sought from defendant "another authorization for the sale of said land which the said defendant refused''; that when said sale was made by defendant, said parties had no contract "of any kind for the sale of said lands,'' and that the only contract for said sale given to them expired October 7, 1912. The foregoing, together with the special defense added to the answer at the trial, alleging fraud in procuring said contract as hereinbefore set forth, constituted the matters on which defendant relied.

The indorsement on said contract, "expires October 7, 1912,'' was explained by the witness Emma C. Harder, who testified: "I was clerk in the office and just put it on as a record for my office work." It formed no part of the contract. The alleged waiver and rescission rest upon the testimony of defendant as to a conversation which took place between him and Mr. Jacoby by telephone. Defendant testified: "I had a conversation with Mr. Jacoby about the 7th or 8th of October, 1912, and he asked me if they came over to see me if I would give them a new contract. He stated: 'That their contract had expired; that they had spent considerable time and money in trying to sell the land,' and said to me: 'Will you give us a new contract?' and I replied: 'Mr. Jacoby, I will not give a new contract; I do not want to tie it up any more on those terms.' '' He also testified to a conversation he had with Kendrick and Jacoby at the city of Willows on June 18, 1913, following a letter he had received from Mr. Kendrick of date June 17, 1913, in which the writer referred to the sale defendant had made of the land and among other things, it was stated: "We are entitled under our contract to full commission upon this sale and request that you make an

accounting as to this sale and payment to us for commission without further delay." Defendant's testimony was that when he met these men the next day, Mr. Jacoby said: "We don't feel like we are entitled to the full commission, but we feel like we are entitled to something. . . . I said: 'Mr. Jacoby, you admitted to me that that contract expired last fall, and you know you asked me for a new contract and I refused to give it to you,' or something to that effect. '

The testimony of Jacoby and Kendrick was that the renewal referred to in their conversation with defendant, testified to by him, had reference to the four months' clause only.

At the taking of a deposition given by defendant prior to the trial, he was shown the contract, copy of which is attached to the complaint, and testified that he recognized it as the contract he had signed; that he read it at that time and was given what purported to be a copy but "was not an exact copy." He testified at the trial that in his copy the contract stated: "If I found a buyer myself during the four months and made a sale, they should receive only half of that commission, my contract had that in it." He testified that when he verified his first answer in which he "admitted the execution of the contract sued on in the exact form as the contract," he overlooked the fact "that they had told me at the time I signed the contract that if they didn't make a sale within four months, they would quit, and didn't tell my attorney about it. I did not have a copy and to the best of my knowledge I burned it up after the contract expired. I mean after the seventh day of October."

The testimony of Kendrick and Jacoby was that when the contract was signed by defendant, there was nothing said about their quitting unless they made a sale in four months. Kendrick testified that to the best of his recollection, no copy was given to defendant at the time and Jacoby testified: "I don't think there was a copy made. . . . I am almost sure there was no copy. There were no provisions made as to the nonenforcement of the ten days' notice involved in that contract. It wasn't mentioned. There was nothing said with reference to our accepting one-half of the commission if the land was sold by Mr. Hansen during the life of that contract. I was present at the conversation of June 8th in front of the postoffice, between Mr. Kendrick and Mr. Hansen and myself. I don't think there was anything said at that time about our

not being entitled to all of the commission." As to the conversation over the phone about October 7, 1912, Jacoby testified that all that was said at that time by him and the reply of defendant was as follows: "I called him up and asked him if he would renew the contract, and he said he would not, and I said, 'Why, don't you want to sell?' and he said: 'Yes, but I won't renew it at this time' and I said, 'If that's the case, that is all,' and I hung up. There was nothing said about my coming over there at that time."

Upon all the points relied on by defendant, the evidence was conflicting and there was sufficient to justify the jury in finding that defendant had failed to support the issues presented by his answer above noted.

The assignment of the contract to plaintiff was shown by a written instrument signed by Jacoby and Avery and bears date July 8, 1913. On cross-examination, plaintiff testified that he did not remember the date. He testified: "The date is on it and shows for itself"; that he talked it over with his partners, and they said "they didn't want to go into this suit." "Q. Then what did you say?" Objected to as "irrelevant, immaterial, and incompetent and not cross-examination." "Q. What was said, Mr. Kendrick, by you to your associates relative to this assignment? Same objection. The Court: Same ruling." We cannot see the materiality of the question. The conversation between the partners at the time the assignment was made was a matter of no concern to defendant. The witness was permitted to testify that the consideration paid by him was ten dollars each to Jacoby and Avery. No issue was raised as to the *bona fides* of the assignment and it was not competent on cross-examination of the witness to show otherwise.

Quite a number of questions were put to witness Kendrick on cross-examination by which it was sought to show what conversation the witness had with defendant at the time the contract was entered into. The court sustained plaintiff's objection thereto, made on the grounds of immateriality, irrelevancy, and incompetency and not cross-examination. The trial court properly held that conversations had at the time the contract was signed were inadmissible as also was parol testimony varying the terms of the contract. The effect of the questions was to be determined by their form and not by defendant's avowal of his intention in asking them.

Defendant's assignment of error No. 10 involves the same principle. The question was on cross-examination of plaintiff and went to a conversation between him and defendant at the time the contract was entered into. If it was also designed to bring out some fact in support of defendant's averment of fraud, it was not competent to establish it by the cross-examination of plaintiff.

Defendant was a witness in his own behalf. He was asked a number of questions for the purpose of showing what was said by the parties during their negotiations at the time of the making of the contract as to what was told the witness to the effect that "if they did not make a sale of the land within the period of four months, they would quit and the agreement would be at an end." Conceding error in sustaining the objection in view of the charge of fraud, it was without prejudice, since the witness afterward was permitted to testify that such statement was made to him and that he acted on it and would not have signed the contract had it not been made. On cross-examination, also, the facts were fully brought out. We have examined the other assignments of error in the admission and rejection of evidence, and have discovered no ruling which we deem prejudicial.

It is contended that the dissolution of the partnership terminated the contract. As the agency created by the contract contemplated that the defendant was entitled to the services of all the partners, the point would have force but for the fact that in the dissolution it was expressly agreed by the partners that the partnership was to continue with respect to certain contracts, among which was the one here involved, and this relation as to it was not changed until the contract was assigned to plaintiff some time after defendant had sold the property.

Error is assigned in giving and refusing certain instructions. By the instruction marked III, the jury were told that "the defense of fraud set up by defendant consists of four elements, and you must find, and it is your duty before you can find for defendant on this defense, that each and every of the said four elements must be found in favor of said defendant": 1. That plaintiff, or Jacoby, on behalf of the partners promised that if they did not sell the lands within four months from the date of the contract they would quit and the contract would end; 2. That defendant acted on this

promise when he signed the contract; 3. That defendant was induced by reason of the promises alleged to have been made to execute and deliver the contract; 4. That plaintiff has not performed and had no intention of performing. The objection urged is that the instruction necessarily eliminates any element of fraud other than the four mentioned, whereas it was alleged in the answer that plaintiff and his partners represented to defendant "that they only wanted and intended said agreement to be operative for the period of four months from its date." This very point is fully covered in instructions IV and V, and by other instructions the statutory definition of actual fraud was fully given.

The court instructed the jury that if they found for plaintiff, their verdict must be for $6,477. It is objected that the instruction "deprived the jury from rendering a judgment for a lesser sum, and deprived the jury from considering evidence before them bearing upon the amount of the verdict." There were 2,159 acres of land in the tract. The agreement was that defendant would pay seven and one-half per cent on the sum of $40 per acre. The land sold for more. At $40 per acre, it brought $86,360, and seven and one-half per cent of that amount is the sum of $6,477. We think the court intended by the instruction, and that the jury so regarded it, that to find for the plaintiff meant that defendant was liable under the contract sued upon, and in that view no other verdict would have responded to the finding.

The court instructed the jury as follows: "It is admitted in this case that defendant executed and delivered to plaintiff here for Kendrick, Jacoby & Avery the contract involved here, plaintiff's 'Exhibit II,' and that said contract has not been revoked or withdrawn in writing, as provided in said contract, prior to the sale by the defendant of the property described in said contract, and such contract could have been revoked without the consent of Kendrick, Jacoby & Avery by such notice in writing at any time after October 7, 1912, but prior to that time said contract could not be withdrawn or revoked by such notice unless accepted by Kendrick, Jacoby and Avery." The error assigned is that "it instructs the jury generally as to admissions by the language 'it is admitted in this case,' . . . but as applicable to defendant, we contend it is erroneous." Defendant admitted signing the contract when shown him on the witness-stand and he also admitted

that it had never been revoked in writing at any time prior to the sale, and the contract shows on its face it could not be revoked prior to October 7, 1912, without the consent of the contractees, but could have been revoked in writing after that date without their consent. We discover no error in the instruction.

The court instructed the jury that no confidential relations existed between defendant and the other parties to the contract when it was made. This conforms to the evidence. The parties dealt at arm's-length.

Error is assigned in the court's refusing certain instructions requested by defendant. Instructions XII and XIII, given by the court, we think fully responded to the instructions refused. Taken in their entirety, the instructions seem to give defendant the benefit of a correct statement of the law upon all involved issues.

The judgment and the order are affirmed.

Hart, J., and Burnett, J., concurred.