214 P.2d 123

**SLIGH et al. v. WATSON et ux.**

No. 5068.

Supreme Court of Arizona.

Jan. 24, 1950.

See also 67 Ariz. 95, 191 P.2d 724.

Stanley Kimble, of Tucson, for appellants.

Bob Barber and Franklin E. Vaughan, of Tucson, for appellees.

THOMAS, Superior Judge.

Mildred Sligh, doing business as Sligh Realty, joined by her husband, George Sligh, brought suit in the lower court to recover a commission as real estate broker based on a written preliminary sales agreement with defendants-appellees, S. I. Watson and Alta S. Watson, his wife. Appellants' complaint set out all the necessary allegations to state a good cause of action. Issues were formed on defendants' second amended answer which set up several denials of the allegations of the complaint and pleaded as special defenses: (1) That the written contract executed by defendants and plaintiff made it a condition precedent to recovery of plaintiff's commission that defendant furnish merchantable title and that defendants had been unable to furnish merchantable title and therefore plaintiff was not entitled to her commission; (2) that at the time, and prior to the signing of said preliminary sales agreement, the defendants informed the plaintiff that the property involved was in the process of probate in the Superior Court of Pima County, that a contest had been filed to the petition for the decree of distribution therein, and that said matter was yet to be litigated in that court; that as a result of said contest, it was impossible at the time of executing said preliminary sales agreement to convey the property therein described with merchantable title and the plaintiff was then informed of such fact by the defendants.

Thereafter, each party filed a motion for summary judgment as authorized by Sections 21-1210 and 21-1211, A.C.A.1939. Plaintiff's motion was denied and defendants' motion granted. From which ruling plaintiff assigns as error the following: 1. The finding that there was no genuine issue as to any material fact. 2. The finding that defendants were entitled to a judgment as a matter of law. 3. The granting of defendants' motion for summary judgment. 4. The failure to grant plaintiff's motion for summary judgment.

It is apparent at once that assignment number one is wholly inconsistent with assignment number four. The former alleges error because of the court's failure to find a genuine issue as to material facts and the latter that the court erred by failing to grant her motion for summary judgment which action could only have been taken if there was no real issue of fact. While under the rules it is permissible in

the trial court to set forth two or more statements of a claim alternatively, regardless of consistency, Sec. 21-408, A.C.A. 1939, we are of the opinion that this is no authority or justification for an appellant advancing inconsistent assignments in this court. The purpose of permitting inconsistent claims in the trial court is to allow the pleading party to take advantage of any possible development in the evidence which would show him to be entitled to a recovery and thus prevent his being forced to elect in advance and at his peril which theory he will proceed upon. Julian v. Carpenter, 65 Ariz. 157, 176 P.2d 693. On appeal no such exigency is present, the record has been made, the issues stand in bold relief, and surely there is no sound reason for an appellant vacillating with inconsistent theories when his case reaches this court.

This being a case where a summary judgment was granted to defendants, our first inquiry should be directed to the basic essential for the granting of a summary judgment. Our court considered this matter in Lewis v. Palmer, 67 Ariz. 189, 193 P.2d 456, 457: "The law is that the procedure for summary judgment may be availed of to bring an action to prompt conclusion when the pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Section 21-1212, A.C.A.1939; Manor v. Barry, 62 Ariz. 122,

154 P.2d 374." See also Cress v. Switzer, 61 Ariz. 405, 150 P.2d 86. In 49 C.J.S., Judgments, § 220, page 394, this statement appears: "* * * If it is apparent from the opposing affidavits or other pleadings and proof that there is a substantial issue between the parties, a judgment can be entered only after the trial of the issue in regular course. * * *" We also quote with approval the following excerpt from Dwan v. Massarene, 199 App.Div. 872, 192 N.Y.S. 577, 582: "The power (to enter summary judgment) is given to the court, but it is needless to say that it must be exercised with care, and not extended beyond its just limits. The court is not authorized to try the issue, but is to determine whether there is an issue to be tried. If there is, it must be tried by a jury. * * * He cannot shelter himself behind general or specific denials, or denials of knowledge or information sufficient to form a belief. He must show that his denial or his defense is not false and sham, but interposed in good faith and not for delay."

As to the allegation of plaintiff that she was a duly licensed real estate broker, defendants' answer is as follows: "Defendants have no knowledge as to the truth or falsity and therefore deny same and demand strict proof thereof." Whether plaintiff was duly licensed as a broker was a material fact; if she was not licensed, it would certainly bar recovery of a commission. However, we are of the opinion that the above denial does not comply nor

conform with the requirements of Section 21-405, A.C.A.1939, and was therefore insufficient to constitute a denial, inasmuch as the above statute requires lack of knowledge or information sufficient to form a belief as to the truth of an averment.

██ The further denials of defendants "without knowledge as to the truth and falsity thereof" as to the listing of their property with plaintiff, the execution of the preliminary sales agreement and as to the commission provided by the Real Estate Board of Tucson are open to the same criticism and fall under the same category pointed out in the ineffectual denial of plaintiff being a real estate broker. Obviously, these so-called denials were more apparent than real. Any doubt as to this is removed by the fact that both parties moved for summary judgment and both motions were heard at the same time. We are in accord with the rule set up in Meyer v. Selggio, 80 Cal.App.2d 161, 181 P.2d 690, 692 in which a similar situation was discussed: "It is settled that a denial for want of information or belief of an alleged fact which may be ascertained from an inspection of a public record within the reach of defendant is insufficient to raise an issue, and that such a denial constitutes an admission of the allegation of the complaint." See also Oregon Mesabi Corp. v. C. D. Johnson Lumber Corp., 9 Cir., 166 F.2d 997; Squire v. Levan, D. C., 32 F.Supp. 437; Silverman v. Levy, Sup., 75 N.Y.S.2d 797. We also approve of the views of the court in Williamson v. Clapper, 88 Cal.App.2d 645, 199 P.2d 337, as expressed in the syllabus: "The growing tendency, in drafting answers, to deny under oath generally the allegations of the complaint without distinguishing between the allegations which are unquestionably true and those which it is desired in good faith to put in issue, is not sanctioned by the law and is inexcusable."

This disposes of the apparent denials in defendants' second amended answer and leaves for our consideration next, defendants' contention that as a matter of law, by the wording of the preliminary sales agreement, plaintiff's right to commission was contingent upon defendants' furnishing "merchantable title." To determine this question it is essential that we interpret the preliminary tri-party sales agreement, as this agreement (couched in the usual phraseology of the form adopted by the Real Estate Board of Tucson, e. g., see Eason v. Heighton, 49 Ariz. 237, 65 P.2d 1373) forms the principal basis for plaintiff's second and third assignments of error. For the sake of brevity we shall quote only those portions of the agreement bearing directly upon the questions of merchantable title and brokerage fees.

"Preliminary Sales Agreement
"$1,000.00 Tucson, Arizona,
 August 12, 1946

"Received of Meyer Feldman and Esther B., his wife, purchaser, the sum of One Thousand And No/100 Dollars ($1,000.00)

as part of the purchase price of the following described property: Brick stucco home at 2728 E. Third Street and inventory herewith attached including all furniture, equipment and all in said premises except tenant's personal items (signed) H. Bee which for account of and as agent for the owner, *the undersigned has this day sold to the above named purchaser, subject to acceptance of the owner and merchantable title, at the price and under the terms and conditions herein set forth.* * * *

"In the event that this sale involves an exchange of properties, it is understood and agreed that the undersigned agent shall act as agent for both parties to the transaction and may receive full commission from both parties for the sale of respective properties. All taxes, insurance premiums, interest or assessments, all mortgage or contract interest, rentals and water charges shall be pro rated as of the date of closing sale. Purchaser shall assume balance payable on all assessments as same now exist.

"By Sligh Realty
(Signed) Harry Bee

"The undersigned purchaser hereby agrees to purchase the above described property at the price and under the terms and conditions hereinabove set forth. You are hereby given 2 days to obtain the owner's acceptance of this sale, during which period this offer shall be irrevocable. * *

"(signed) Meyer Feldman
"(signed) Esther B. Feldman
"August 14, 1946.

"I, or We, hereby agree to sell the above described property to the above named purchaser or his assigns at the price and under the terms and conditions hereinabove set forth, to furnish, or cause to be furnished, at our expense, owner's title insurance policy * * * showing merchantable title thereto and to pay the regular commission as provided by the Real Estate Board of Tucson, and sales expenses.

"(signed) S. I. Watson
"(signed) Alta S. Watson.

"(Form adopted by the Real Estate Board of Tucson.)"

Appellees contend, and doubtless the court so held, that the above preliminary sales agreement by its terms and provisions therein contained, precluded any recovery of commission by appellants until appellees actually acquired merchantable title. Appellants and appellees agree on the well established rule that a contract is to be construed, if possible, so that every part thereof shall be given effect, and examining the contents of the entire agreement, we find the phrase "merchantable title" appearing in the agreement in three separate places. First, in that part of the agreement signed by Sligh Realty by Harry Bee (agent for appellants): "Subject to acceptance of the owner and merchantable title." Second, in the part signed by the buyers, Meyer and Esther B. Feldman: "After delivery of preliminary report for title insurance showing merchantable title to said premises to agent, 30 days shall be allowed for examination

and closing sale." Third, in that part signed by the appellees: "I, or We, hereby agree to sell the above described property to the above named purchaser or his assigns at the price and under the terms or conditions hereinabove set forth, to furnish or cause to be furnished, at our expense, owner's title insurance policy showing merchantable title thereto * * *."

■ Taken by itself, the phrase in which the term "merchantable title" is first used is susceptible of ambiguity—consequently the remainder of the phrase "subject to acceptance of the owner" should not be separated from its context, nor considered apart from the other provisions of the agreement which may throw light upon its meaning and of the intention of the parties. It is to be borne in mind that the agreement should be construed in its entirety.

Applying this test and noting the subsequent use and application of the words "merchantable title", it seems clear that the term "subject to acceptance of owner and merchantable title" actually means and was intended to mean "subject to acceptance by owner and (owner's furnishing title insurance policy showing) merchantable title."

■ Under this interpretation, which we believe to be correct, the contract itself did not as a matter of law preclude a recovery of the broker's commission until the owners actually acquired merchantable title of the premises.

■ In determining the rights of a real estate broker to his commission, we have many times repeated the well established rule of law in Lockett v. Drake, 43 Ariz. 357, 31 P.2d 499, 500, in these words: "* * * It is the almost universally accepted rule of law that, in the absence of a specific contract to the contrary, when a real estate broker has brought together the parties to a sale or exchange of real estate, and they have agreed fully on the terms and entered into a binding contract for such sale or exchange, his duties are at an end and his commission is fully earned, and it is immaterial that the parties to the contract rescind mutually or that one or the other thereof defaults and the sale or exchange is not fully effected."

There is no doubt that a binding agreement was entered into in the preliminary sales agreement signed by the broker, the buyer and the seller. We believe in the instant case the owners (appellees) could have compelled the Feldmans (buyers) to specifically perform their contract to pay the purchase price of the property by simply complying with their own promise to deliver a preliminary report for title insurance showing merchantable title in the premises. The fact that the owners did not choose to do so could not affect the broker's right for their legal commission. Easom v. Heighton, 49 Ariz. 237, 65 P.2d 1373.

Appellees urge that notwithstanding the execution by them of the preliminary sales agreement above referred to appellants may not recover because as pleaded by appellees in their answer and shown by their affida-

vits and depositions, appellants were informed and knew prior to the execution of the preliminary sales agreement that the property in question was in process of probate and that a contest had been filed to the petition for distribution and that said matter was yet to be litigated in the Pima County Superior Court.

Appellants strenuously contend that the admission of such evidence in view of the unequivocable terms of the preliminary sales agreement signed by appellees violates the parol evidence rule and that such a defense was inadmissible and testimony in support thereof objectionable.

■ The general rule is as stated in 8 Am.Jur., Brokers, Section 185, page 1098, as follows: "If a broker, at the time he makes his contract with the owner, knows of defects in the employer's title, or knows of facts sufficient to put a prudent person on inquiry, which, if followed with reasonable diligence, would have resulted in such knowledge, he is not entitled to recover where the sale fails because of such facts, unless it was the intention of the parties that the employer should subsequently perfect his title in order to be able to perform." See also Best v. Kelley, et al., 22 Wash.2d 257, 155 P.2d 794, 156 A.L.R. 1387; Dunn v. Kramer, 306 Ky. 377, 208 S.W.2d 41; 12 C.J.S., Brokers, § 95(4); Anno. 156 A.L.R. page 1398 et seq.

It seems apparent that the above principle is basically a specialized statement of the rule requiring the utmost good faith of the broker. As was said in Hurt v. Sands Co., 236 Ky. 729, 33 S.W.2d 653, 654: "No broker has any right to negotiate a contract at the expense of his employer when he knows of facts or circumstances which will prevent the deal from being consummated."

An allegation of defense in an answer setting up knowledge of facts or facts from which knowledge will be imputed of defect in the title is basically an allegation of the breach of the duty of the good faith which the broker owes the seller. Every such contract imposes that duty on the broker and is ingrained in and made part of the contract whether expressed or implied. The relationship of seller and broker cannot exist without the presence of this duty. 8 Am.Jur., Broker, Section 142, page 1067.

When appellees pleaded knowledge of defect in title by appellants, they were in effect pleading breach of the brokerage contract. One pleading breach of a contract is not seeking to vary its terms and it follows the parol evidence rule would have no application. 32 C.J.S., Evidence, § 930, page 854; Dunn v. Kramer, supra; Brenard Manufacturing Co. v. McCarty Drug Co., 212 Ala. 66, 101 So. 759, 760.

■ Evidence in support of the allegations would have the effect which is quoted from the last cited case as follows: "This parol testimony was not varying the terms of the writing, but tendered to shed light upon the issue of breach vel non of the contract * * *." In the Dunn case,

supra, it is treated as follows [306 Ky. 377, 208 S.W.2d 43]:

"Appellant (broker) contends that the evidence with respect to his knowledge of the Gordon encumbrance was incompetent because it constituted an attempt by parol to alter the written brokerage contract wherein appellee (seller) had agreed to furnish the purchaser a 'good and sufficient warranty deed.'

"There are two answers to this contention: (1) the relationship of principal and agent requires good faith dealing between the parties, and evidence of the lack of it upon the part of the agent is always admissible, and (2) * * *."

The breach of the duty of good faith is a breach of the contract in cases of brokerage. A plea setting up facts amounting to a breach of the contract is not within the restrictions of the parol evidence rule. Such a plea basically admits the contract and seeks release from the consequences thereof because of the breach of faith in having obtained the contract; it does not seek or attempt to vary or alter its terms, and, as has been pointed out, the parol evidence rule would have no application. Brenard Manufacturing Co. v. McCarty Drug Co., supra.

▆ Brokers are agents under the specialized rules relating to brokers heretofore pointed out, and are governed by specific application of the rules of agency. A broker's compensation is governed by the obligations placed upon him by the law of agency. 8 Am.Jur., Brokers, Section 142, page 1068; 12 C.J.S., Brokers, § 69, page 158; Bewley & Rader Land Co. v. Whitaker, 29 Tenn.App. 106, 194 S.W.2d 244.

Considered in this light, therefore, it is readily apparent that the parol evidence rule in this case would have no application and the lower court correctly denied the motion to strike.

▆ The defendants were not entitled to introduce parol evidence to vary the terms of the written contract such as attempting to prove an agreement or understanding aliunde the contract, but they were entitled to offer proof of the realtor's state of knowledge or information concerning the want of merchantable title in the sellers, which knowledge may have come to the realtor in numerous ways. If this information was brought to the realtor's notice by word of mouth it is admissible on the question of knowledge and is not objectionable because it might come from the lips of the sellers.

▆ While we have dwelt at some length on the duty of good faith owed by the broker to his principal, by the same token, the law, without exception, contemplates that the broker shall be paid if he does his work in good faith. Defects in title or any other extrinsic matter cannot defeat his right to commission, if his work is done with full respect to his duty to his principal. 12 C.J.S., Brokers, § 95, page

226; 8 Am.Jur., Brokers, Section 179 page, 1094.

However, to say he should be compensated for useless work when he knew it to be useless would be absurd. Bewley & Rader Land Co. v. Whitaker, supra.

This brings us to the important factor for determination. Was the question of the good faith on the part of appellants before the lower court as a controverted issue when summary judgment was rendered? We think it was, and such a determination results in a conclusion that the trial court was in error in granting defendants' motion for summary judgment.

Admittedly both parties were aware of pending probate proceedings. Was this such an encumbrance in appellees' title which, if known to appellants before the execution of the preliminary sales agreement, as would defeat their right to a commission? We think not. A mere outstanding encumbrance which can be removed has no effect on the broker's right to commission, since he may assume the same will be removed. Southern Trust Co. v. Bunch, 159 Ark. 47, 251 S.W. 674; Frischkorn Real Estate Co. v. Hoskins, 226 Mich. 30, 196 N.W. 888; Grieb & Erickson v. Estberg, 186 Wis. 174, 202 N.W. 331; 12 C.J.S., Brokers, § 95, page 228.

The positive, unrestricted covenant of appellees "to furnish, or cause to be furnished, at our expense, owners' title insurance policy showing merchantable title thereto" amounted to a representa-tion to appellants that appellees could and would furnish merchantable title and imposed an affirmative duty on them to take such action as was necessary to convey merchantable title as covenanted.

It must be presumed by the above covenant on the part of appellees that it was understood between the parties hereto that appellees intended to complete probate proceedings on the property in question so that merchantable title might be furnished. No other implication can arise by virtue of this unrestrained promise to deliver title.

We conclude, therefore, that such knowledge on the part of appellants prior to the execution of the preliminary sales agreement was not of a sufficient nature as to impute bad faith to them and deprive them of their commission. Frischkorn Real Estate Co. v. Hoskins, supra; Bledsoe v. Lombard, Mo.App., 194 S.W. 518.

Appellees further pleaded and submitted proof that prior to the entering of the preliminary sales agreement by them, appellants were notified that a contest had been filed to the petition for distribution of the property in question to appellee S. I. Watson; this allegation was flatly denied by appellants.

Appellees' Exhibit 1, entitled "Preliminary Report for Title Insurance" disclosed a defect in appellees' title inasmuch as same disclosed an interest in the property in Mrs. Ruth Young and Mrs. E. W. Yoakum. Doubtless this fact, if it was a

fact, was sufficiently serious to be claimed as more than a mere encumbrance and knowledge thereof by appellants prior to the execution of the preliminary sales agreement with appellees would be a violation of good conscience on the part of the appellants for the reason that consummation of the sale depended upon a seriously doubtful contingency. We think knowledge of such facts would bring appellants within the rule expressed in 8 Am.Jur., Brokers, Section 185, page 1098, supra, and the abundance of cases supporting the rule. The record discloses that this serious issue of bona fides was a controverted fact before the lower court.

 Rule 56, Section 21-1210, A.C.A. 1939, being the Superior Court Rules of Civil Procedure governing summary judgments, follows the Federal Rules of Civil Procedure, 28 U.S.C.A., insofar as summary judgments are concerned. In Cress v. Switzer, 61 Ariz. 405, 150 P.2d 86, 88, we adopted with approval the Federal Rules Decisions holding in Dairy Engineering Corp. v. De-Raef Corp., D.C., 1 F.R.D. 679: "An examination of the authorities shows that this principle is not limited to law cases. A summary judgment should never be given until the facts are clear and undisputed. If there is a controversy on a factual question, judgment should be withheld until proof has been made." There being a genuine controversy before the court on the material question of bona fides of the appellants, we hold that judgment should have been withheld until full proof was made in the premises.

The case is reversed and remanded for a new trial in accordance with the principles herein stated.

LA PRADE, C. J., and DE CONCINI, J., concur.

STANFORD, J., being disqualified because of illness, the Honorable FRANK E. THOMAS, Judge of the Superior Court of Cochise County, was called to sit in his stead.

UDALL, Justice, with whom PHELPS, Justice, joins (dissenting in part).

We concur with our brethren of the majority (1) in their analysis of the legal effect of the use of the term "merchantable title" which appears thrice in the preliminary sales agreement, (2) that the trial court erred in entering a summary judgment for defendants, and (3) that the judgment must be reversed.

We dissent from that portion of the court's opinion which holds that the parol evidence rule was inapplicable on the motion to strike or will not be relevant upon the retrial of this matter when defendants undertake to establish proof of their second special defense, to wit: that plaintiff was informed and knew prior to the execution and delivery of the preliminary sales agreement that the property in question was in process of probate and that objections ("a contest") had been filed to the petition for

distribution and that said matter was yet to be litigated in the Pima County Superior Court.

We are familiar with the general rule, quoted in the court's opinion, from 8 Am. Jur., Brokers, sec. 185, page 1098, and have read the cases collated in the annotation, 156 A.L.R. 1398, to the case of Best v. Kelley, supra. Significantly, however, none of the cited cases, as we read them, come to grips with the problem with which we are here confronted, i.e., the establishment of such a defense as that here interposed by admitting oral evidence on the part of the seller varying the express terms of a written agreement of the parties to furnish merchantable title and pay a commission to the broker.

Let us examine some of the principal cases relied upon by the majority, as we believe they are readily distinguishable. In the case of Brenard Mfg. Co. v. McCarty Drug Co., supra, the contract was ambiguous in that it provided that the goods sold would be delivered at their "earliest convenience". The court said [212 Ala. 66, 101 So. 761]: "* * * It was material and important for the jury to know the circumstances of the case and *how the parties understood this indefinite term of the contract. It was dependent upon the disputed facts,* was a question of fact for the jury, and resort was properly had to parol testimony. * * *" (Emphasis supplied.) In Dunn v. Kramer, supra, this obiter dicta statement appears [306 Ky. 377, 208 S.W.2d 43]:

"* * * the relationship of principal and agent requires good faith dealing between the parties, and evidence of the lack of it upon the part of the agent is always admissible." However, the decision really turned upon a holding to the effect that where an original brokerage contract, requiring the owner to furnish the purchaser a good and sufficient warranty deed, was subsequently modified orally with respect to the sale price of the property, oral evidence that it was likewise modified as to terms of conveyance was held not incompetent as an attempt by parol to alter the written contract. It is elemental that if a written agreement is subsequently modified by an oral agreement and evidence is admitted concerning any part of such oral agreement then evidence is admissible as to the whole thereof. Such evidence does not tend to vary the terms of a written agreement but simply tends to establish the subsequent oral agreement admittedly executed. In Hurt v. Sands Co., supra, the parol evidence rule is not mentioned. The facts disclose a written agreement of sale was executed by the sellers, the buyers materially altered the agreement before signing same, the sellers then declined to accept the proposition as altered, and the negotiations failed. Thereafter, one of the owners (the husband) signed another proposition substantially the same as the counter offer, the buyers accepted but the owner's wife (who had advised the broker that she would not make any other trade or join in any deed except

upon the terms contained in the original proposition) refused to execute the instruments of conveyance and the deal collapsed. While the trial court directed judgment for the broker the court of appeals reversed the case. This is a far cry from the situation in the instant case where the defendants (both Watson and wife) unequivocally agreed in writing to furnish a merchantable title and pay the broker's fee herein sued for.

The fallacy of the court's reasoning in the majority opinion, we believe, stems from the statement that pleading knowledge of defect in title is in effect pleading a breach of the brokerage contract but not a variance of its terms. The effect of the majority opinion is that the equitable principle of utmost good faith which the courts have declared must exist between principal and agent now by judicial fiat becomes an integral part of the written contract establishing agency; that this equitable principle thus written into the contract furnishes the basis for the introduction of parol evidence to vary, and in this case to unequivocally contradict, the terms of an agreement which the parties themselves voluntarily reduced to writing. Such a doctrine is wholly unsupported by the authorities where the parol evidence rule has been raised and amounts to pure sophistry. Quaere: In what respect, we ask, did the plaintiff breach his contract? The defendants do not claim that the plaintiff was guilty of any fraud, concealment or misrepresentation in his dealings with the purchaser Feldman. The record shows that two days after the broker's part of the agreement was signed the defendants in executing their part of the contract solemnly covenanted, without any strings attached, to give merchantable title and pay the brokerage fee.

The court holds that knowledge by the plaintiff of the pending probate proceedings was not such an encumbrance as to defeat the right to a brokerage fee but it concludes that prior knowledge by the broker of objections ("contest") to the petition for distribution by two of defendant Watson's daughters by a prior marriage, was sufficiently serious to be a violation of good conscience on the part of the plaintiff inasmuch as the consummation of the sale was dependent upon a "seriously doubtful contingency". To bolster its conclusion that the broker was chargeable with such knowledge the court refers to the defects in the title shown by Exhibit I, being "Preliminary Report for Title Insurance" doubtless overlooking the fact that this report bears a date subsequent to the sales agreement. The record indubitably shows that this report was not brought to the attention of any of the parties until after the sales agreement had been fully executed. How can it be seriously contended that the broker in the instant case breached his duty to his principal or acted in bad faith by negotiating the contract with Feldmans because he allegedly knew of facts or circumstances that would prevent the deal from being consum-

mated? Did not the defendants in signing the sales agreement expressly covenant to assume the risk of clearing the title of whatever defects might exist? Is it fair to give to defendants this shady avenue of escape from being required to pay the brokerage fee called for in the contract? In just what respect did the broker fail in his duty to his principal? We have searched the majority opinion in vain for an answer to any of these questions.

In the written contract, the sellers unequivocally agreed to convey to the purchaser a good and merchantable title and to pay the broker the regular commission provided by the Real Estate Board of Tucson. No exception relieving defendants from either their obligation to convey to the purchaser a good and merchantable title or to pay plaintiff his commission was incorporated in the written contract. Yet under the majority opinion defendants will be permitted to introduce parol evidence at a trial of the case to establish an entirely different contract, to wit, that sellers would not be required to pay a commission to broker Sligh unless the defendants were able to give the buyer a merchantable title. We believe this constitutes a gross violation of the parol evidence rule.

The majority opinion gives lip service to the parol evidence rule wherein they state: "The defendants were not entitled to introduce parol evidence to vary the terms of the written contract such as attempting to prove an agreement or understanding aliunde the contract, * * *" but it seems to us that this is precisely what is sanctioned. On a trial will not the defendants undertake to prove that it was understood between them and the broker that no fee would be paid if the deal fell through on account of their inability to clear title? We confess our inability to follow the tenuous reasoning by which the court concludes: "* * * they were entitled to offer proof of the realtor's state of knowledge or information concerning the want of merchantable title in the sellers, * * *. If this information was brought to the realtor's notice by word of mouth it is admissible on the question of knowledge and is not objectionable because it might come from the lips of the sellers." In our opinion this holding in effect tosses the hoary and fundamental "parol evidence rule" out of the window in brokerage fee cases. It seems to us that such a pronouncement is a complete departure from the rule as announced in the case of Jarnagin v. Edwards, 22 Ariz. 116, 194 P. 1097, 1098: "It is a well-settled rule of law that when parties reduce their contract to writing, and that writing is free from ambiguity and uncertainty, it may not be added to or taken from, altered, or varied, by any contemporaneous oral agreement or understanding, except for fraud or mistake. It is assumed, since that method of expressing their understanding was adopted, it will be employed to record all of their agreement, and not a part thereof." See also S. H. Kress & Co. v.

388

Evans, 21 Ariz. 442, 189 P. 625. The test seems to be: "Is the proffered testimony inconsistent with the written agreement?" If it is then such evidence is excluded. Wells v. Hocking Valley Coal Co., 137 Iowa 526, 114 N.W. 1076. Wigmore on Evidence, 3d Ed., Vol. 9, Sec. 2430(3) says in effect that if the subject is dealt with at all in writing, then parol evidence is inadmissible to vary it. Judged by these standards, in our opinion, there can be no question but that the proffered defense would violate the rule.

We are convinced that a broker's contract in this respect stands on no different footing than any other contract. We quote from Nichols Applied Evidence, Vol. 1, Brokers, Sec. 66, p. 865: "Sec. 66. Parol evidence to vary contract. Parol evidence ordinarily is not admissible to add to or vary a written contract with a broker for his services. Parol evidence is inadmissible to vary written contract as to broker's commission. * * *" In support of this text statement the following excellent cases are cited: Kendrick v. Hansen, 35 Cal. App. 578, 170 P. 675; Starbird v. Davis, 27 Colo. App. 467, 150 P. 244; Buxton v. Colver, 102 Kan. 871, 171 P. 1158; Sexton v. Reilly, 131 Wash. 206, 229 P. 305. We have carefully scrutinized such well-known authorities as Wigmore on Evidence and Jones Commentaries on Evidence to see if they recognize an exception to the parol evidence rule in brokerage cases. Our search proved futile as we have been unable to find such an exception anywhere outside the majority opinion.

The most recent case law statement of the parol evidence rule in brokerage matters is found in the syllabus of Berger v. Community Founders, Inc., Ct.Cl. 1948, 83 N.Y.S.2d 791: "Where agreement for payment of brokerage commissions was complete on its face, parol evidence that broker was advised of a previous contract by which owner was obligated to sell the property to another purchaser and that such was part of the agreement of hiring was inadmissible as in violation of the parol evidence rule." See also the following brokerage fee cases from other jurisdictions wherein it is held that parol evidence is inadmissible to alter the express and unequivocal terms of a written contract to pay a brokerage fee: Lundeen v. Ottis, 164 Cal. 183, 128 P. 335; Morgan v. W. A. Howard Realty Co., 68 Colo. 414, 191 P. 114; Wells v. Hocking Valley Coal Co., supra; Green v. Booth, 91 Miss. 618, 44 So. 784; Loxley v. Studebacker, 75 N.J. L. 599, 68 A. 98; Smith v. Geis, 32 Ohio Cir.Ct.R. 666.

We deem it much more important to preserve inviolate the rule that the terms of a written instrument shall not be varied by oral testimony than to create an exception to the "parol evidence rule" solely for the protection of those who deal at arm's length with real estate brokers. If a brokerage fee is not to be payable under certain contingencies it would seem to work no hardship to require the parties to write such a

proviso into their agreement, otherwise they cannot be heard to complain of the result of their own folly or lack of foresight. Martin v. Ede, 103 Cal. 157, 37 P. 199; McDonald v. Bernard, 87 Cal.App. 717, 262 P. 430.

Inasmuch as the defendants failed to plead a defense that can be legitimately established we favor reversing the case with directions to enter judgment for plaintiff.