279 P.2d 447

**PHOENIX FEED AND SEED CO., Inc., Appellant,**

v.

**Olga I. ADAMS, Appellee.**

**No. 5899.**

Supreme Court of Arizona.

Feb. 1, 1955.

Andersen & Ray, Phoenix, for appellant.

W. T. Choisser, Phoenix, for appellee.

UDALL, Justice.

The primary question presented on this appeal is whether the trial court properly granted a summary judgment in favor of appellee Olga I. Adams, who will be hereinafter referred to as defendant Adams.

The law is well settled that a summary judgment should never be entered unless the facts are clear and undisputed. If there is a controversy on a factual question, judgment should be withheld until proof has been made. Sligh v. Watson, 69 Ariz. 373, 384, 214 P.2d 123, 130. Rule 56 (c), Rules Civ.Proc. (now appearing as Section 21-1212, A.C.A.1939), provides in part:

"* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In order to determine the appeal it is therefore necessary that we make a careful examination of the record consisting of the pleading and depositions before us, as there were no supporting or controverting affidavits or admissions on file.

Appellant, Phoenix Feed and Seed Co., Inc., a corporation, filed its complaint, naming as defendants Dan and Ida M. Wisner, husband and wife, and Olga I. Adams (Ida's mother). Simultaneously, a writ of attachment was levied upon the realty used as a chicken ranch, record title to which was in defendant Adams, her husband—not a party to the action—having disclaimed any interest therein. Thereafter defendant Ida M. Wisner passed away and a "second amended complaint", naming Dan Wisner as administrator of her estate, was filed. Defendant Adams filed no answer to the complaint, nor did she attack by a motion to dismiss the sufficiency of the complaint—or any cause of action therein—to state a claim for relief against her. The only document filed by her was a motion for summary judgment in which she also asked that the writ of attachment be quashed. Previously taken depositions of C. M. Tuttle, president of the plaintiff corporation, and of defendants Dan Wisner and Olga I. Adams were relied upon to support such motion.

### Analysis of the Complaint

Insofar as defendant Adams is concerned the complaint sets forth two causes of action, the first consisting of two counts. The first count alleges that defendants Dan and Ida Wisner, husband and wife, and Olga Adams, jointly operated a business for the purpose of raising chickens on jointly owned premises at 1704 W. Shangri La Road, Phoenix (hereinafter referred to as the Shangri La property), and alleges a sum of $3,358.65 due on an open account for various poultry, feed, and supplies purchased by "defendants Dan and Ida M. Wisner and Olga I. Adams, acting for and on behalf of themselves and each other."

The second count alleges that plaintiff, as an accommodation, guaranteed payments to the bank on certain notes of defendants executed by "Dan and Ida Wisner, acting for and on their own behalf, and defendant Olga I. Adams", and that it has been required to pay a sum of $8,619.71 thereon. It is further alleged that simultaneously with the execution of these notes, plaintiff and defendants Wisner entered into conditional sales contracts for the sums of the notes and that defendants have not performed their obligations thereunder. The prayer is for a money judgment for the amounts above set forth, with interest and costs.

The second cause of action makes appropriate reference to the indebtedness stated in the first cause of action, and further alleges that defendant Adams purchased the Shangri La property on which the chicken ranch was located but that this purchase was made on behalf of defendants Wisner, who own a beneficial interest therein, defendant Adams being trustee. It further alleges that defendants Wisner have made improvements upon these premises in the sum of $30,000, using proceeds from the sale of chickens, which proceeds under the terms of the conditional sales contracts were required to be paid to plaintiff.

The relief prayed is that the beneficial interest of the Wisners and the amount of proceeds from the sale of chickens invested in improvements be determined; that plaintiffs be awarded an equitable interest in the attached property to this extent. In the event this be denied it is prayed in the alternative that the aggregate sum of $11,978.36 stated in the first cause of action be adjudged an equitable lien on the property.

## Analysis of the Depositions

The three depositions before the court present a very sketchy picture of the dealings between the parties, wholly insufficient upon which to safely predicate any firm pronouncement as to the governing principles of law.

In his deposition, Tuttle, the president of the plaintiff corporation, states that transactions with the Wisners were commenced in July of 1951, plaintiff's sales representative calling on Wisner at his home. He further states that in addition to the open account, there was an arrangement whereby Dan and Ida Wisner would sign notes and conditional sales contracts for the price of a "group" of chickens and the estimated cost of the feed to raise them to maturity, all supplied by plaintiff, the note and contract thereon to be paid in ninety days from the proceeds of the sale of the particular "group" of chickens. Thirteen such transactions were entered into.

It is admitted that defendant Adams never signed any of these notes or contracts. However, on occasion she would place orders by phone and sign receipts for delivery of poultry supplies. It appears there were several conferences held at Tuttle's office between Tuttle and Dan Wisner, at some of which his wife Ida was present, and on one occasion defendant Adams attended.

Tuttle also had occasion to call on the parties at the ranch, and in some instances defendant Adams would be present and participate in the negotiations. On one of these visits, at which Mrs. Adams and her husband were present, there was a discussion in regard to the valuation of the Shangri La property in a financial statement—not part of the record before us—given to plaintiff by the Wisners. Tuttle stated:

"* * * There was a figure in there for buildings which I questioned the value, the figure, with him, and he gave me figures as to the area covered and the cost, and we decided that it wasn't an unreasonable figure."

Mrs. Adams, although present, remained silent and did not question this financial statement, given Tuttle, nor assert her title to the Shangri La property.

When asked what information he had that supported the allegation that Wisners were acting in Mrs. Adams' behalf, Tuttle stated:

"Well, it is my belief that her part in this transaction was for some reason or other kept quiet. When they really got into trouble she was called in to sit in and listen, and if—Dan on two or three occasions referred to her, 'What do you think of that, Mom?' At another point, when they had terrific sickness there, and that particular moment Dan felt as though all was lost, and he turned to me and he says 'Well, you might as well take over the place now,' and Mrs. Adams was there and was very much interested, but she isn't a woman who says much about it. It seemed that Dan was running the show regardless of who owned it."

Tuttle admitted that he did not search the county records to determine the ownership of the property on which the ranch was situated, but relied upon the situation apparent from his visits. In regard to the presence of the Adams on the premises, he testified: "I don't know except that Dan said that they just worked there." When asked whether he observed Mrs. Adams working in the chicken business, Tuttle testified:

"Oh, yes, she took part in the slaughtering and dressing and also did something in the care of the raising of the chickens."

From Tuttle's deposition it further appears that many of the negotiations between plaintiff and the Wisners were carried on by one of plaintiff's field service men whose version of the affair was not before the court as apparently his deposition had not been taken.

Dan Wisner's statements conflict in many respects with those of Tuttle. He admits having some discussion about the financial statement, but denied that Mrs. Adams was present. He refused—on advice of counsel—to answer whether or not he signed such a statement. He was asked to place a value upon the improvements put upon the land, and stated that twenty-five or thirty thousand dollars would be conservative. When questioned as to the ownership of those buildings, he denied present ownership but

stated that he had paid for the materials used and performed most of the labor thereon. He denied having any business relationship or lease agreement on the Shangri La property with Mrs. Adams, but stated that he and his wife had discussed between themselves making payments to her of a percentage if the business was put on a paying basis. He admitted occasionally paying Mrs. Adams " * * * a five or a ten for helping me process some chickens, or something like that."

Defendant Olga Adams in her deposition stated that she purchased the Shangri La property on which the chicken ranch operations were conducted, using $1,000 of her savings as a down payment, but that a majority of the $50 a month payments on the purchase money mortgage were made by Dan Wisner. She stated that she and her husband and the Wisners took possession of the property at the same time, and that no financial or lease arrangement was ever made with the Wisners. She revealed that she was presently operating the ranch, raising chickens for another firm.

The trial court, by granting the motion for summary judgment, held this record revealed there existed undisputed facts which precluded any possibility of plaintiff establishing the liability of defendant Adams on any of the theories stated in the complaint.

## Assignments of Error

Plaintiff by appropriate assignments of error urges that the trial court improperly granted the summary judgment and quashed the writ of attachment for the reasons that the record before it on the motion revealed the existence of genuine issues as to (a) whether defendant Adams was engaged in a joint venture in the chicken business with Dan and Ida Wisner, (b) the existence of facts estopping defendant Adams from asserting her sole title to the property, (c) the true ownership of the attached premises, and (d) the existence of facts which would give plaintiff an equitable lien on the property attached.

We can find no facts in this record which conclusively establish freedom of defendant Adams from any liability alleged in the complaint. While we cannot from the record at this stage of the proceedings safely lay down any guiding principles of law, a fair analysis of the issues framed by the second amended complaint and the depositions convinces us that there were controverted issues as to material facts to be tried. Such being the case, it was error for the trial court to render a summary judgment in favor of the defendant Olga I. Adams. We hold that plaintiff, on this record is entitled to an opportunity to offer evidence: (1) that the chicken ranch, though operated in the name of the Wisners, was in truth and in fact a joint adventure with Olga I. Adams as alleged; (2) as to whether defendants Wisner have a beneficial interest in the Shangri La property; (3) that there are facts giving rise to an equitable lien.

The judgment is reversed with directions to vacate the order granting the motion for

summary judgment, to deny the same, and to reinstate the complaint and writ of attachment as to this defendant and proceed to a trial on the merits.

Judgment reversed with directions.

LA PRADE, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.